## M. L. Woods v. John H. Durrett.

So much of the act of December 21, 1853, (Special Laws, p. 7,) as created the Mississippi and Pacific railroad reserve was legislation upon a subject of general interest, affecting the rights of the people of the State at large, and must therefore be held to be public and general legislation, within the judicial knowledge of the courts of the State. And even if this were not the case, the subsequent references in public acts to the reservation would require the courts to take judicial notice of it. (Paschal's Dig., Art. 5368, Note 1107; Id., Art. 3712, p. 83.)

Though the courts cannot, as a general proposition, take judicial cognizance that a particular tract of land is within the reserve created by the act above referred to, yet, from their judicial knowledge of the locality and extent of the county within which the land is admitted to lie, and of the locality and extent of the reserve as defined by the act, they may deduce that fact as an inference.

A settlement and survey made upon vacant land within the reserve, at a time

when the land was still reserved, could furnish to the party claiming under it no cause of action entitling him to a judgment.

Where a plaintiff suing for land presented in his original petition such an illegal settlement and survey as his cause of action, but subsequently by amended petition set up a patent from the State procured *pendente lite*, the amended petition, if properly excepted to, should have been allowed only upon the payment of all cost previously incurred, unless the plaintiff by further amendment connected the patent with a valid cause of action, which, though imperfectly presented in the original petition, was in existence at the commencement of the suit.

If, in case of an amendment, where costs might have been taxed, the defendant neither excepted to the amended petition nor asked, as a condition precedent to its allowance, that the pre-incurred costs be imposed on the plaintiff, he cannot in the Supreme Court complain for the first time that on the rendition of judgment against him below he was taxed with the entire costs in the case. (Paschal's Dig., Art. 54, Note 243.)

A person who, on the 7th of December, 1853, settled upon vacant land, did not thereby acquire any pre-emption rights in virtue of the act of February 7, 1853, supplementary to "An act granting to settlers on public domain pre-emption privileges." The privilege accorded by that act of acquiring title by pre-emption settlement was limited to such persons as were settlers on public land at the date of its enactment. (Paschal's Dig., Art. 4335.)

From the passage of the act of 7th February, 1853, supplementary to "An act granting to settlers on public land pre-emption privileges," approved 22d January, 1845, (Paschal's Dig., Arts. 4326 and 4335,) until the passage of the act of 13th February, 1854, "to denote to actual settlers on vacant public domain one hundred and sixty acres of land," (Paschal's Dig., Art. 4341,) there was no privilege or protection extended to settlers on public land, if indeed there were any authority for such settlement.

The 7th section of the act of 13th February, 1854, reads as follows: "The provisions of this act shall not be so construed as to grant a pre-emption right to any land which by law is now reserved from location or entry: *Provided*, That all those who have settled upon the public domain since the 7th day of February, 1853, and previous to the passage of this act, shall be permitted to perfect their titles to three hundred and twenty acres of land, according to the provisions of an act supplementary to an act granting to settlers on public domain pre-emption privileges, approved February 7, 1853." (Paschal's Dig., Art. 4347.) It may be doubted if this section does not violate the 24th section of the VIIth article of the constitution of 1845, which reads as follows: "Every law enacted by the legislature shall embrace but one object, and that shall be expressed in the title." (Paschal's Dig., p. 67, Sec. 24, Note 199.)

The privilege extended by the 7th section of the act of 1854 to settlers on the public domain was expressly limited to settlers upon land not then

reserved from entry or location, (Paschal's Dig., Art. 4347,) and hence did not apply to lands within the Mississippi and Pacific railroad reserve.

This latter difficulty was obviated by the act of 15th August, 1856, "for the relief of pre-emption claimants." (Paschal's Dig., Art. 4349.) But this does not remove the objection, that the land was within the Pacific railroad reservation. (Id., Arts 4337, 5038, Notes 985, 1107.)

The proviso to the 3d section of the act of August 15, 1856, (Paschal's Dig., Art. 4351, Note 985,) excluding from the relief granted by that act such persons as had, subsequent to the 21st day of December, 1853, settled as pre-emptors within the Pacific railroad reservation, is not to be construed as relieving from disabilities all persons who had, previous to that date, settled as pre-emptors within the reservation. The proviso conferred no rights upon any settlers not comprised within the class comprehended by the enacting clauses of the act.

Where a pre-emption settler, who once had a right to perfect his pre-emption claim, failed to do so within the time limited by law, he cannot assert, in virtue of such lapsed right, any valid subsisting equitable title against a patent for the land issued to another person.

The act of 26th August, 1856, (Paschal's Dig., Art. 4348,) repealed the pre-emption law of 13th February, 1854, (Id., Arts. 4341, 4346,) and on the same day the act "to authorize the location and settlement of the Mississippi and Pacific railroad reserve" was passed. (Id. 5038, Note 1107.) By the 2d section of the latter act, persons settled upon any portion of said reserve at the date of said law were authorized to purchase not more than one hundred and sixty acres of land, at the price of fifty cents per acre. This act, with direct reference to the subject-matter, sustains the construction already given to the act of 15th August, 1856. (Paschal's Dig., Art. 4341, Note 985.)

From the repeal of the law of 13th February, 1854, (Paschal's Dig., Art. 4341,) with the exception of the limited time allowed by the law of the 15th August, 1856, (Art. 4350,) there was no law in force under which pre-emptions could be claimed, until the passage of the law of 10th February, 1858. (Paschal's Dig., Arts. 4357 to 4361.)

A pre-emption settler, under the act of 10th February, 1858, has no equity against a patentee, who had made a valid location subsequent to the 1st of March, 1857, when the Mississippi and Pacific railroad reservation was by law opened, and prior to the law of 1858. (Paschal's Dig., Arts. 4357 to 4361.)

The pre-emption law of the 10th February, 1858, (Paschal's Dig., Art. 5357,) revived the rights of all persons who were previously entitled to lands under the pre-emption laws in the title of that act enumerated, and also of those who were entitled as actual settlers in the Mississippi and Pacific railroad reservation, (Id., 5043,) upon complying with the terms of the law. But a party could only take the quantity of land under the respective laws, and under the latter by complying with the condition.

Where a ruling did not affect the result of the case, it will not be revised.

APPEAL from Tarrant.    The case was tried before Hon. NAT. M. BURFORD, one of the district judges.

This case is fully stated in the opinion of the court.

The petition was filed February 3, 1858.    There was judgment below in favor of the plaintiff, Durrett, for the land in controversy and all costs.

The defendant appealed, assigning error to the charge of the court, to the effect that he had failed to show any good equitable title existing prior to the plaintiff's patent, which was dated February 4, 1859, and that there was also error in entering up judgment against defendant for all the costs, as the proof showed no cause of action prior to the patent.

The acts of the legislature on which the case turned are referred to in the syllabus.    They need to be well studied to understand the principles involved.

*Ferris & Nicholson*, for appellant.—I. The court erred in his charge to the jury.    We complain of this part of the charge: "The patent is a good title, unless the defendant show a good equitable title existing prior to date of patent. If the evidence show that Norton and his assignees resided three years on the land, and in all other respects complied with the pre-emption law, then he would have such an equity as would defeat a patent," &c.

This was leaving the jury to determine as best they could what was the pre-emption law.    The court should charge the law, and not submit to the jury to determine the law for themselves.    After charging the jury that the patent is a good title, he should have proceeded to instruct them as to what constitutes a prior equitable title under the pre-emption laws.

II. The court erred in overruling the motion for a new trial.    The verdict of the jury is contrary to the law and the evidence.    The defendant proved a prior, valid, and subsisting equitable title to the land.    The defendant

proved that he made the affidavit required by law, and caused the land to be surveyed in 1854 and re-surveyed in February, 1858; and the certificate of the county clerk that the proof had been duly made before him in 1858; and that Norton conveyed to Conwell and Conwell to defendant, Woods. This pre-emption settlement was made prior to the creation of the railroad reserve, having been made on the 7th day of December, 1853, and under the law of 7th of February, 1853, then in force, (see Acts of 4th Leg., extra sess., p. 33.) This class of pre-emption settlement within Peters' colony was legalized August 15, 1856, (see Acts of 6th Leg., adjourned sess., p. 39.) And, whatever may have been the laches of the defendant, his right was perfected by the re-survey of 1858, and this was done before the issuance of patent in 1859. Under these laws the defendant holds a valid equitable right to the land, which overrides the plaintiff's patent. It is unnecessary to cite authorities that a prior equitable title will overcome a patent.

III. Plaintiff's survey was made during the pendency of the Mississippi railroad reserve, and was, therefore, void. (Kimmell v. Wheeler, 22 Tex., 77.) The patent was plaintiff's cause of action, as appears by amendment filed in June, 1859. No other evidence was relied on or introduced by plaintiff. Therefore the court erred in not adjudging all costs against plaintiff which had accrued prior to said amendment.

*Junius W. Smith,* for appellee.

*A. Y. Fowler,* also for appellee.—It is contended by appellant's counsel that the patent of appellee is void, from the fact that his original survey was made in 1856, at a time when the land in controversy was reserved from location by the Pacific railroad act. In answer to this, we think that the patent, having issued after the repeal of

28—xxviii.

that reserve, on the 2d of March, 1857, is not void, but is a good title against the State. In the case of Mills v. Stoddard *et al.*, 8 How., 345, 364, it is said that, had the entry been made, or the patent issued after the repeal of the reservation, and before its revival, the title would have been good. The same law was also held in the case of Stoddard v. Chambers, 2 How., 284. This rule has been extracted from those two decisions, and accepted among the printed rules which have governed our land office for years.

Even were it necessary that we should show a re-survey after the 2d of March, 1857, we think we are warranted in saying that it was done, or at least we have furnished *prima facie* evidence of the fact, which has not been rebutted or denied by appellant. A patent is held to be *prima facie* evidence that all the laws and formalities necessary for its issuance have been complied with, and, among others, we presume that the re-survey of the land, after the repeal of the reserve, should be included, if it were necessary for the procurance of the patent. Upon this point, we refer the court to the cases of Styles v. Gray, 10 Tex., 503; Deen v. Wills, 21 Tex., 642; and Polk's Lessee v. Wendell *et al.*, 9 Cranch, 87; 3 Conds., 286, 291. In this last case the court says: " The laws for the sale of public lands provide many guards to secure the regularity of grants, to protect the incipient rights of individuals, and also to protect the State from imposition. When all the proceedings are completed by a patent issued, a compliance of these rules is pre-supposed, and these inferences are drawn from the existence of the patent itself." From the time this reserve was repealed, March 2, 1857, up to the date of the patent, February 4, 1859, there was ample time for a re-survey, and, if I am correct in my view of the law cited, the patent presumes and proves that this was done, if it were one of the " pre-requisites." The act of January 10, 1860, (see Laws of 8th Leg., p. 19,) confirms the appellee's title and makes it good against the State.

A patent legally issued can be set aside only by substantial equities, by a full compliance with the laws under which the claim is made. (Brush v. Ware *et al.*, 15 Peters, 93; Polk's Lessee v. Wendall, 9 Cranch, 87; Miller *et al.* v. Kerr, 7 Wheat., 1.) From the above cited cases it will be seen that the appellant must not only show substantial equities, but the whole of his claim is opened to examination, and that he must show that he has complied with the law under which he claims. The appellant's claim is founded upon the 1st section of the act of January 10, 1858, and comes under the second class of claims mentioned in that section. (See O. & W. Dig., Repealed Laws, Art. 366.) This act gives appellant until 1st January, 1859, to have his survey made, &c., provided he complies in all other respects with the laws under which he claims. Now, by an examination of the laws it will be seen that this claim does not come up to the requirements, and we think both his field-notes and certificate are without the authority of law, and consequently cannot be taken as evidence of any claim, legal or equitable, whatever.

Moore, C. J.—This suit was brought by John H. Durrett, the appellee, to recover one hundred and sixty acres of land situated in Tarrant county, to which he claims, in his original petition, to be entitled under a survey made on the 8th day of November, 1856, by virtue of a certificate issued by the county court of Tarrant county to R. H. Burnett, as a settler in Peters' colony.

By the act to provide for the construction of the Mississippi and Pacific railroad, passed December 21, 1853, all the vacant and unappropriated public lands lying between the parallels of latitude 31° and 33° north, east of the 103° of longitude west from Greenwich, were reserved by the State for the purpose indicated and provided for in said act, and remained thus reserved until the passage of the act of 26th of August, 1856, to authorize the location, sale,

and settlement of said reserve. (Paschal's Dig., Art. 5038, Note 1107.)

It does not appear from the statement of facts that there was any direct evidence before the court showing that the land embraced in this survey is situated in this reserve; but this is evidently a fact of which the court has judicial knowledge. It may be said that the law making this reservation was enacted for the benefit of a private corporation, and hence it is not a statute of which the court can take judicial notice. We think it may well be doubted whether any part of this law can properly be regarded as a private act, which does not come within judicial notice. Certainly portions of it, and especially that portion making the said reservation, legislates upon subjects of general interest, and affects the rights of the people of the State at large, and must therefore be held to be public and general legislation in this particular, as much so as if no private object were embraced in the law. (9 Bacon's Abridg., 230, 231, and 261.) But, if this were not the case, the subsequent reference to the reservation in public laws would require the courts to take judicial notice of it.

It has been suggested, however, that, although the courts can take cognizance of the fact that such a reservation has been made by the State, they cannot know that any particular tract of land is situate within it. This as a general proposition is correct. But the reservation east of the 103° of longitude west from Greenwich (and the court must certainly know that Tarrant county is east of this line) embraces a territory of one hundred and thirty statute miles in breadth. The boundary line of the reservation on the north is defined by the law of the 26th of August, 1856, to run with the southern boundary of the county of Denton, which is the northern boundary of the county of Tarrant, and as the county of Tarrant is declared in the law creating it to be but thirty miles square, all lands situate in it must certainly be included in the reserve.

The survey upon which the appellee brings his suit was made at a time when the land in controversy could not thus be appropriated by him, (Kimmell v. Wheeler, 22 Tex., 86; Sherwood v. Fleming, 25 Tex. Supp., 408,) and there was consequently no cause of action presented in his original petition authorizing a judgment in his favor; but this defect was cured by the amendment setting up title to the land by patent from the State, issued to him after the commencement of his suit.    This amendment unquestionably presented a different title and cause of action from that relied upon in the original petition, and, if excepted to on this ground, should have been permitted only upon the payment of the cost which had accrued prior to its being filed, unless the appellee had by further amendment connected his patent with an existing right of action at the commencement of the suit imperfectly presented in his original petition.

But the appellant neither excepted to the amendment nor asked that the costs previously incurred should be imposed upon appellee as a condition precedent to its being received.    He evidently, therefore, cannot complain for the first time in this court that judgment was rendered against him for the entire cost in the case.

Although the survey upon which appellee counted in his original petition was void, his patent is evidence of title, and the judgment of the court below in his favor cannot be questioned, unless the appellant has shown an older and superior equitable right to the land.    To determine this, we must examine his title.    Appellant claims the land under a settlement and improvement made upon it, as he alleges, about the 7th of December, 1853, by D. E. Norton, as a pre-emption; and to support his claim he introduced in evidence a pre-emption certificate issued by G. Nance, clerk of the county court of Tarrant county, on the 8th of February, 1858, to L. D. Conwell, assignee of said Norton, in which it is certified that said Norton and

his assignee, Conwell, had resided upon and cultivated a tract of land re-surveyed for said Conwell as a pre-emption claim on the 15th of February, 1858, for the space of three years prior to the 21st day of December, 1856, and had fully complied with the provisions of the law granting land to settlers upon the public domain; the affidavit of Norton that he settled on the land and claimed three hundred and twenty acres as a pre-emption on the 7th of December, 1853; the re-survey referred to in the certificate of the county clerk of the 8th of February, 1858, which re-survey purports to have been made by virtue of the said certificate and subsequent thereto, on the 15th day of February, 1858, for three hundred and twenty acres of land; a deed from Conwell to the appellant for the tract of land he claimed as a settler, containing three hundred and twenty acres, dated January 30th, 1858. The appellant also offered in evidence a survey of a pre-emption claim made for said Conwell for one hundred and sixty acres of land, on the 2d of April, 1855, by virtue of his affidavit made on the day of said survey. The statement of facts shows, as a part of appellant's testimony, that it was admitted by appellee that said survey of one hundred and sixty acres, and the re-survey of three hundred and twenty acres, embraced the land sued for by appellee. The appellant also introduced evidence tending to show the settlement and occupation of the land by the parties under whom he claimed.

The act of February 7, 1853, supplementary to the pre-emption law of 1845, limited the privilege of acquiring title by pre-emption settlement to such persons as were settlers upon the public land at the passage of this law. And from the passage of this act until that of the 13th of February, 1854, entitled "An act to donate to actual settlers on vacant land one hundred and sixty acres of land," there was no privilege nor protection extended to settlers on public land, if indeed there was any authority for such

settlement. The only portion of this law which is claimed to have any bearing on appellant's claim for a pre-emption of three hundred and twenty acres of land is the 7th section, which is in the following words, to wit:

"Sec. 7. The provisions of this act shall not be so construed as to grant a pre-emption to any land which by law is now reserved from location or entry: *Provided,* That all those who have settled upon the public domain since the 7th day of February, 1853, and previous to the passage of this act, shall be permitted to perfect their titles to three hundred and twenty acres of land according to the provision of an act supplemental to an act granting to settlers on public domain pre-emption privileges." Approved February 7, 1853.

It might perhaps admit of serious question whether this section of the act does not relate to a different subject from that expressed in its caption, and if it be not consequently unconstitutional and void. Be this as it may, it certainly gives no support to the appellant's claim. For the privilege extended by it to settlers on the public domain prior to the passage of the law was expressly limited to settlers upon land not reserved at the *passage of the law* from entry or location. The land, as we have seen, was in the Mississippi and Pacific railroad reservation, and positively reserved from either location or entry. The plaintiff's patent also establishes the fact, that it was within the limits of Peters' colony, and on this account it was not, when this law was enacted, subject to appropriation by pre-emption.

The latter of these objections to the right of the parties, under whom the appellant claims to have obtained a title for the land, by virtue of the alleged settlement in 1853, was obviated by the act for the relief of pre-emption claimants, passed August 15, 1856. But this law does not remove the other objection to appellant's claim, that the land, at the date of the law of February 13, 1854, upon

which alone he can rely, was in the Mississippi and Pacific railroad reservation.

It is true, the proviso in the 3d section of the act of the 15th of August, 1856, might seem to imply, that settlers within the railroad reservation, prior to the 21st of December, 1853, were not excluded from perfecting their pre-emption claims. But it cannot be held, from the prohibition of the statute to extend privileges to one class, that another not mentioned in it and to whom the enacting clauses of the law have no application, is thereby relieved from disabilities within which both were previously embraced. It would go much beyond any just construction to hold, that this proviso conferred upon settlers in the reserve, prior to the 21st of December, 1853, the right to perfect titles to pre-emption claims, nothwithstanding they were previously expressly prohibited from doing so, because it is said this cannot be done by those who have settled subsequent to that time, much less to say that they may acquire not merely the amount of land to which others are entitled who settled at the time such privilege is conferred, but that they shall get double that quantity by reason of their settlement at a time when positively forbidden, and when expressly excluded from this privilege on account of such settlement.

The next laws relating to this subject are the act of the 26th of August, 1856, repealing the act of February 13, 1854, and the act passed on the same day, entitled "An act to authorize the location, sale, and settlement of the Mississippi and Pacific railroad reserve," by the 2d section of which persons settled upon any portion of said reserve at the date of said law were authorized, in preference to all others, to purchase not more than one hundred and sixty acres of land, at the price of fifty cents per acre. If there were any doubt as to the proper construction of the act of August 15, to which we have just adverted, it would be removed by these laws, which were passed at the same

session of the legislature, and with direct reference to the disposal of the public domain within the reservation.

From this repeal of the law of February 13, 1854, with the exception of the limited time within which parties relieved by the law of August 15, 1856, were authorized to have their surveys made and their field-notes returned, there was no law in force under which pre-emptions could be claimed until the passage of the act of February 10, 1858. It may be also remarked, if the appellant's assignees were relieved by the act of August 15, 1856, as they failed to avail themselves of it within the time their right to do so was limited by the terms of the law, and as its provisions have not been revived, it cannot now be invoked to sustain his title.

From what we have said in regard to the facts, and from the summary of the laws which we have given, it is obvious that neither the appellant nor his assignors had a valid, subsisting, equitable pre-emption title or claim to the land previously to the act of February 10, 1858, against a patentee who had made a valid location subsequent to the 1st of March, 1857, when the Mississippi and Pacific railroad reservation was by law open to location, and prior to the passage of said act of February 10, 1858.

Appellant, however, insists that, although his rights were dormant at the date of this law, they were revived by it, and the pre-emption certificate and re-survey under which he claims give him an equitable title to the land superior to the patent of appellee. This law was intended and unquestionably does revive the rights of all persons who were previously entitled to lands under the pre-emption laws of the 22d January, 1845, the 7th of February, 1853, and the 13th of February, 1854, and also of those who were entitled as actual settlers in the Mississippi and Pacific railroad reservation, upon complying with the terms prescribed in said law. The certificate which appellant claims, though it recites the survey made on the 15th of

February, 1858, purports to have been made on the 8th of February, 1858, and if this is its true date it was made two days before the passage of this act, and at a time when, as we have seen, there was no law in force authorizing pre-emption settlements, or for perfecting titles upon those previously made. At its date the clerk had no authority to hear the proof or give the certificate, and it could consequently furnish no authority for the survey if a certificate were necessary to authorize this.

But without further comment upon the apparent defects in the certificate and the survey, it is quite obvious that appellant's vendor was not entitled to a survey of three hundred and twenty acres of land if the settlement in virtue of which he claims was made prior to the passage of the law making the reservation, though the certificate itself places it upon that very day. The laws of 1845 and 1853 are not relied upon, because the settlement was made after their passage. The 7th section of the act of 1854 does not come to his aid, because it applied only to settlements on lands subject to location at the passage of the law. If he were entitled to a pre-emption claim at all, it was for only one hundred and sixty acres, and, as it has been held by the court in the case of Fowler v. Allred, 24 Tex., 184, where the settlement was made in 1853, in Peters' colony, but not in the reserve. But whether appellant or his vendor was entitled to a pre-emption of one hundred and sixty acres of land, or as in our opinion was really the case, he was entitled to that quantity of land under the 2d section of the law of August 26, authorizing the location, sale, and settlement of the Mississippi and Pacific railroad reservation, as there was an entire failure to perfect such right or title as directed and required by the law conferring it, it could not, if it had been asserted, have been enforced against the plaintiff's patent.

It does not appear from the bill of exceptions or statement of facts that any evidence went to the jury to

impeach the pre-emption certificate under which appellant claimed. The ruling of the court, therefore, that this could be done, must be regarded merely as an abstract legal opinion, which did not and could in no way affect the result of the case, and consequently ·we are not called upon to review it.

There is no error in the judgment, and it is

AFFIRMED.