## J. C. Beatty et al. v. B. T. Masterson.

### No. 6635.

1. **Entry of Public Lands — Statutes.** — The statutes for the location of land certificates (Rev. Stats., arts. 3894, 3895, 3886) do not require the application to the surveyor or entry to be made by the owner of the certificate.

2. **Same.** — The possession of the certificate, with the ability to deliver it to the surveyor with the application for entry, is sufficient authority for the surveyor to receive and file the application, and to make survey upon such entry.

3. **Same—Location Without Authority.** — If the possession of such certificate was wrongful, and its location unauthorized, the rightful owner alone can complain. He may adopt the act, and the ownership of the land would remain in him.

4. **Surveyor May Write the Application for Entry.** — A surveyor may write out the application for the entry addressed to himself, and an entry under such application is valid.

5. **Adopting Location.** — The owner adopting the entry so made without authority becomes the owner of the land, as if the proceedings were regular.

6. **Effect of Irregular Entry.** — The land so located was withdrawn from the public domain, and the subsequent locator took no interest in it.

Appeal from Bandera. Tried below before Hon. T. M. Paschal. The opinion discloses the case.

*Templeton & Carter,* for appellants. — 1. The application for the land in controversy made in the name of C. J. Jones, September 12, 1881, having been made by virtue of genuine land certificates placed on September 11, 1881, in the hands of the surveyor of Bandera County, and the said application having been properly recorded in the surveyor's records in Bandera County, and the appellee having constructive notice of the said application and the previous appropriation of the land (besides also having actual notice), and the said application having been followed by a survey of the land designated by the said application within twelve months from the date of the application (September 12, 1881), was a lawful appropriation of the land, so that it was not vacant and subject to the appellee's application and file when it was made on September 12, 1882, or at any time thereafter.

2. The application for the land made September 11, 1881, and recorded September 12, 1881, was not void as against the appellee in this case, because of and for the reason that Sam. Stephens, the county surveyor of Bandera County, received the certificates by virtue of which the said application and the location was made, and wrote in a description of the land in controversy, over the signature of C. J. Jones, on the paper given to him in San Antonio, Bexar County, on September 11, 1881.

3.　The previous appropriation of the land in controversy by virtue of the file made September 12, 1881, did not become void as to the appellee by the failure of the surveyor of Bandera County to record the field notes of the survey made under the said application in the records in his office within a year from September 12, 1881.　Const., sec. 2, art. 14; Rev. Stats., arts. 3895–3897; Report of Codifiers, p. 29; Wyllie v. Wynne, 26 Texas, 42; Railway v. McGehee, 49 Texas, 481; Gilbeau v. Mays, 15 Texas, 410; Hollingsworth v. Holshousen, 17 Texas, 41; Thomson v. Railway, 68 Texas, 392; Holmes v. Anderson, 59 Texas, 481; Cassin v. O'Sullivan, 61 Texas, 594; Lewis v. Durst, 10 Texas, 415; Fowler v. Hilburn, 21 Texas, 489.

*B. T. Masterson* and *Maxey & Fisher*, for appellee. — The application under which appellants claim the land in suit originally consisted of a blank sheet of paper signed at the foot thereof as follows:　" L. L. Lacy, agent for C. J. Jones."　Lacy was a deputy in the Bexar County surveyor's office, and as to Jones the record does not disclose whether he was a myth or a real person.　The blank sheet of paper thus signed, together with the twenty land certificates, was handed by Will Bonnell, a deputy surveyor of Bexar County, on the 11th of September, 1881, to Sam Stephens, the surveyor of Bandera County, who filled out the sheet of paper and filed the same as an application for land in his office on the 12th of September, 1881.　Stephens had no authority from Lacy or Jones to write anything above their signatures, and was not acquainted with either of them at the time; and neither of them, nor any other person, was present when he wrote the application above the signature.　There is nothing in the record to show who Jones was, or that he ever had any right or title to the certificates.　The record, however, does affirmatively show that the certificates at said dates, 11th and 12th of September, 1881, belonged to one L. L. Myers, who sold the same—a portion to appellant Hart and the remainder to appellant Shores, on May 22, 1882.　We submit that the pretended application is a nullity—absolutely void—as contrary to law and in contravention of public policy.

How applications and surveys are made.　Rev. Stats., arts. 3895–3897, 3907, clause 8.

That surveyors nor deputies can act as agents of locators, etc.　Penal Code, art. 118.

Wright v. Hawkins, 28 Texas, 452; De Leon v. White, 9 Texas, 599; Flanikin v. Fokes, 15 Texas, 181; Wills v. Abbey, 27 Texas, 202; Cotulla v. Laxson, 60 Texas, 444; State v. Thompson, 64 Texas, 692.

HENRY, ASSOCIATE JUSTICE. — This suit was brought by appellee against the surveyor of Bandera County and appellants to compel the surveyor to record and deliver the field notes of certain surveys made for

the appellee. The lands in controversy were charged to be part of the public domain, and as such subject to be located by certain alternate certificates owned by appellee. The cause was tried without a jury, and judgment was rendered for the plaintiff.

The plaintiff on the 12th day of September, 1882, delivered the certificates to the surveyor of Bandera County, and at the same time made in due form a written application for their survey upon the land in controversy.

On the 11th day of September, 1881, one L. L. Myers was the owner of twenty alternate land certificates, which were on that date delivered by a deputy surveyor of Bexar County to the county surveyor of Bandera County, and at the same time the deputy surveyor delivered to the county surveyor a blank sheet of paper containing the following signature or endorsement: "L. L. Lacy, agent for C. J. Jones."

The surveyor testified that the certificates and blank were handed to him at San Antonio; that he had informed the deputy from whom he received them that there was vacant land on the head of the Sabinal in his county sufficient to put in twenty certificates, of which he could not then give a description so as to make a file; that he received the blank to be filled up by him as an application when he returned to his county, where he had a description of the land; that upon his return home he wrote out above the signature an application for the land now in controversy and filed and recorded it on the 12th day of September, 1881; that he surveyed the lands in the months of June, July, and August, 1882, and that the field notes were recorded between the 6th and 20th days of November, 1882, when they were forwarded to the General Land Office.

It was not proved by whom the signature to the blank paper was made, nor that C. J. Jones ever owned any interest in or had possession of any of the certificates. But it was proved that all of said certificates were conveyed by the Gulf, Colorado & Sante Fe Railway Company, to which they were issued, to L. L. Meyers on the 2d day of March, 1881, and that they were all conveyed by Myers to the defendants Hart and Shores on the 22d day of May, 1882.

The conveyances of the certificates by Myers each recited that the certificate conveyed had been "located by me in the County of Bandera and State of Texas upon the public domain of said State."

Appellants contend that " the court erred in finding in favor of plaintiff and in rendering a judgment against the defendants, because plaintiff failed to show that the land in controversy was unappropriated public domain and subject to be located by him under any of his pretended files thereon; and on the contrary his evidence showed that said land had been appropriated and filed on and surveyed under valid certificates prior to any of his said files or pretended files."

If the application made in the name of Jones and filed and recorded

by the county surveyor of Bandera County on the 12th day of September, 1881, and the subsequent proceedings with regard thereto were such as to be a lawful appropriation of the lands by the certificates then owned by Meyers and subsequently by the defendants Harris and Shores, it necessarily follows that, without regard to other questions presented by the record before us, the lands were not subject to appropriation by plaintiff's certificates on the 12th day of September, 1882, nor subsequently.

Applications for the survey of the public lands are regulated by the following articles of the Revised Statutes:

"Article 3894.  Each county, district, and special deputy surveyor shall keep in his office a well bound book as a register of entries, in which he shall register all entries or applications for land in his county or district.

"Article 3895.  An entry or application shall be in writing and be dated and signed by the applicant.  It shall particularly describe the claim to be surveyed and the land applied for; which entry or application, together with the land certificate or scrip, or other legal evidence of title to be surveyed, shall be filed in the office of the county or district surveyor in which the land is situated, and where the said claim to be surveyed shall remain until returned, together with the field notes, to the General Land Office.

"Article 3896.  The survey shall be made by a copy of the entry or application, and strictly in accordance with the same; and hereafter no survey shall be made until after entry or application, as provided in the preceding article."

The statute does not require that the application shall be made by the owner of the certificate.  It does require that the land certificate itself shall be filed with the application.

We think that the possession of a certificate and the ability to deliver it to the surveyor with the application for its survey is sufficient authority to the surveyor for him to receive and file the application and certificate and make the survey.  If the possession of the certificate is wrongful and its location unauthorized the rightful owner alone can complain.

Notwithstanding such want of his consent and authority the owner of the certificate will own the land located under it, and he may unquestionably adopt the location and ratify all proceedings leading to the acquisition of the land.  If the possession of the certificate has been wrongfully obtained and its location has been made against the will of the owner, he may, no doubt, disavow it and be relieved from its effects, but if in any case he chooses to retain the location and acquire the land other persons have no right to complain.

It is not shown that the deputy surveyor of Bexar County who delivered the certificates to the surveyor of Bandera County and directed the application for their survey to be made, or the county surveyor of Bandera had any interest whatever in the certificates or in the land located

beyond the legitimate fees of the county surveyor. Myers, the owner of the certificates at the date of their location, seems to have known of their location and to have approved it. As we have said, as early as May 22, 1882, several months before plaintiff took any steps to acquire the lands, he referred to the fact and place of their location, and the present owners purchased them as so located, and continued to acquiesce in the disposition that had been made of them.

We are constrained to conclude that the certificates were delivered to the surveyor by persons entrusted with them by the owner for the purpose of causing them to be located.

We think that there is nothing in the law and that no good reason exists forbidding a surveyor from writing out the application addressed to himself for the survey of the certificate when he is requested to do so by its holder and when the land applied for is designated, even in a general way, by such holder.

Notwithstanding it is not shown that Jones had any interest in the certificates, or even an authorized agency with regard to their location, the fact that the person who furnished that name to the surveyor as the signer of an application for the survey of the very lands in dispute had possession of the certificates, connected with the fact that the undisputed owner of the certificates shortly afterwards declared that he had himself made the locations, must, in the absence of all other evidence, lead to the conclusion that all of the precedent acts had been done for the benefit of and by the authority of the owner.

We think the title of the owner of the certificate to the land to which it had been applied by another, even without his authority, has never been called in question in this State, notwithstanding such transactions have often occurred.

The only purpose of the articles of the statute above quoted was to furnish accessible information of what land had been previously appropriated, for the benefit of others who had a right to acquire an interest in what remained unappropriated, so that they could make their selections out of what was left.

There was nothing in the mode or substance of the proceedings in this instance that had any tendency to delay the plaintiff or to deprive him of the exercise of that right.

The forms of the law having been complied with, and the land having been surveyed by authority of genuine certificates then in the hands of the surveyor, the ownership of the certificates or the instrumentalities through which they had been applied to the land, unless they could be shown to be prohibited by law, were matters that were immaterial to other scrip owners.

In view of the facts that the public domain subject to location was being rapidly exhausted and that limitation was running against the certificates

themselves, we think it would be an unauthorized and harsh construction of the law to hold that if the first locations and surveys were in fact made without the knowledge or consent of the owner of the certificates he could not, when the facts came to his knowledge, adopt the locations and hold the lands, but must lose both the lands and the certificates.

We think the judgment should be reversed and a judgment here rendered that plaintiff in the court below take nothing by his suit and pay the costs of this court and of the District Court.

:                                            *Reversed and rendered.*

Delivered May 2, 1890.