## META EYL ET AL. v. STATE OF TEXAS.

### Decided November 30, 1904.

**1.—Location—Survey.**

Where entry and application for survey upon various certificates were made in one written application designating the specific land sought to be appropriated under each, the fact that the survey thereunder located the land covered by each certificate upon land designated in the location, not for that, but for another certificate, was a mere irregularity which did not prevent the location and survey from operating as an appropriation of the land as against a subsequent locator.

**2.—Same.**

The fact that a survey was made upon land different from that designated in the application or that designated for other certificates located by the same application, was also a mere irregularity, it being within the power of the locator to adopt and ratify the change of location made by the surveyor.

**3.—Same—School Land—Contiguous Surveys.**

The fact that the two surveys, for the locator and the school fund, made under a railroad grant certificate, were not contiguous, was a mere irregularity, of which only the state could take advantage.

**4.—Location—Duplicate and Original Certificates.**

When duplicate certificates had been procured and located, on affidavit of loss of the originals, which being afterwards found were located elsewhere, the owner could abandon the location upon the duplicates and ask patent on the original certificates as located, especially where the duplicates were found to be located on lands previously appropriated.

**5.—School Land—Designation by Commissioner.**

The fact that in the location of railway land grant certificates the commissioner did not personally select and designate the even and odd sections, in order to designate those belonging to the locator and the school fund respectively, but by the custom of his office the draughtsman adopted the numbering thereof shown in the surveyor's return, did not prevent the numbering so made from operating as a designation of the even numbered sections as belonging to the school fund.

**6.—Constitution—Return of Field Notes—Computation of Time.**

The constitution going into effect on April 18, 1876 (Rev. Stats., arts. 3880–3882), the time of five years from its adoption allowed for returning certificates and surveys to the General Land Office is to be computed as excluding that day, and their return on April 18, 1881, was in due time.

**7.—School Land—Location—Validating Act.**

The Act of February 3, 1883, declaring lands theretofore surveyed for the school fund, upon certificates valid or invalid, to belong to that fund cured irregularities in the surveys and returns as well as in the certificates themselves.

**8.—School Land—Appropriation—Compensation for by State.**

The fact that lands once lawfully appropriated to the school fund were, in the adjustment of claims between the state and the school fund under the Acts of March 3, 1899, and February 23, 1900, by mistake of the commissioner, not charged to the school fund, but that fund compensated for them as having been granted by the State to private locators, and did not have the effect of taking such lands out of the school fund.

**9.—School Land—Patent.**

Patents issued to locators of veteran certificates for land previously surveyed for and appropriated to the school fund gave the patentees no superior right to the land and could be canceled at suit of the State.

Appeal from the District Court of Travis. Tried below before Hon. V. L. Brooks.

*Joseph D. Sayers* and *Chas. Rogan*, for appellants.—In order to maintain its suit—being an action of trespass to try title—the State must show that the locations and surveys were made and returned to the General Land Office as required by law. Rev. Stat. (1879), arts. 3895, 3896, 3898, 4795; De La Garza v. Cassin, 72 Texas, 440; Von Rosenberg v. Cuellar, 80 Texas, 256; Adams v. Railway, 70 Texas, 252, 269; Ross v. Early, 39 Texas, 390; New York & T. L. Co. v. Thompson, 83 Texas, 170; Gunter & Munson v. Meade, 78 Texas, 638; Atkinson v. Ward, 61 Texas, 388; Wilson v. Mason, 1 Cranch (U. S.), 24; Lindsey v. Miller, 6 Peters (U. S.), 674.

The written entry or application made for the owner and filed with the surveyor of Menard County not having located the original certificates in block as a whole, but as distinct entities by describing the lands to be surveyed for each certificate specifically by metes and bounds, and the surveys made for them and returned with the certificates to the Land Office not being made in accordance with the entry, except those for certificate 116a, but embracing land entirely different from that upon which they had been respectively located, were equivalent to surveys made without a previous entry or location, and are therefore void; such surveys being prohibited by articles 4131 and 4132, Revised Statutes (1895), did not have the effect of segregating the lands from the mass of public domain and did not confer title or color of title upon the owner of the certificates or upon the school fund. Same authorities.

The fact that the surveyor did not perform his duty in making the surveys in accordance with the entries does not make the surveys valid or excuse the owner from having them made in pursuance therewith.

It was his duty to see that they were properly made. New York & T. Ld. Co. v. Thompson, 83 Texas, 182.

If the locations of the original certificates were void because their duplicates had been previously located in another county by authority of the owner, or if the surveys were void because they were not made in pursuance to the entry or because they were not returned to the land office until the certificates became barred, any person holding genuine and valid land certificates had the right to appropriate the land in controversy under their said certificates. Houston & T. C. Ry. Co. v. Carter, 24 S. W. Rep., 1103; New York & T. L. Co. v. Thompson, 83 Texas, 170.

The legally constituted authority having failed to number, designate and reserve for the permanent school fund any of the surveys made in Menard County for the original certificates, none of the sections or surveys became so identified as the property of said fund that an action of trespass to try title can be predicated thereon; nor can the action of the locator and surveyor in numbering the sections or surveys, being without authority of law, relieve the objection. Act of January 30, 1854, sec. 3, p. 11 (Gammel's Laws, vol. 3, p. 1445); Act of February 8, 1860, p. 68 (4 Gammel's Laws, 1430); Act of August 16, 1876, sec. 2, p. 153 (8 Gammel's Laws, 898); Rev. Stat. (1879), art. 4276; Constitution, art. 7, sec. 2; Stillman v. Hurd, 10 Texas, 112; Stephenson v. Price, 30 Texas, 718; Von Rosenberg v. Cuellar, 80 Texas, 255; Smith v. McGaughey, 87 Texas, 61; Day Ld. & C. Co. v. State, 68 Texas, 541; 23 Am. & Eng. Ency. of Law (2d ed.), 365-6; 27 Id. 798.

The length of time—five years from the adoption of the constitution—prescribed for the survey and return of the certificates to the General Land Office (Const. art. 14, sec. 2), expired at midnight of April 17, 1881. Ross v. Morrow, 85 Texas, 172; Phelan v. Douglass, 11 Howard's Practice Reports (New York), 193; Jones v. Kern, 101 Ga., 309.

The certificates and the surveys not having been returned to the General Land Office prior to April 18, 1881, all proceedings of whatever kind and by whomsoever had in reference to them after issuance, before and after their filing in the General Land Office, were null and void; and such proceedings could not and did not operate to vest title or color of title, within the meaning of section 2, article 14, of this constitution, to the surveys or any of them, either in the owner of the certificates or in the permanent school fund; nor were the surveys or any of them brought by such proceedings within the constitutional provision setting apart "all the alternate sections of land reserved by the State out of grants made to railroads or other corporations" for the support of the public schools. Von Rosenberg v. Cuellar, 80 Texas, 260; New York & T. L. Co. v. Thompson, 83 Texas, 170.

Unless the repugnancy be irreconcilable, the Act of February 3, 1883, should be construed and interpreted in connection with all other laws upon the same subject matter, and if from a view of the entire Act and from other laws in pari materia the evident intention of the legislature be different from the literal import of the terms in the Act, that intention should prevail. Act of February 3, 1883, p. 4 (Gammel's

Laws of Texas, p. 310); Bryan v. Sundberg, 5 Texas, 418; Cain v. The State, 20 Texas, 362; Selman v. Wolfe, 27 Texas, 72.

Unless it be shown that the lands in controversy were located, surveyed, returned to the General Land Office, numbered and reserved for the permanent school fund as required by law and section 2, article 7 of the constitution, the Act of February 3, 1883, will not give protection, nor can this action be maintained. Rev. Stat. (1879), arts. 3895, 3896, 3898, 4795; De La Garza v. Cassin, 72 Texas, 440; Smith v. McGaughey, 87 Texas, 61; Wilson v. Mason, 1 Cranch (U. S.), 24; Lindsey v. Miller, 6 Peters (U. S.), 674.

Assuming the preceding propositions under this assignment to be correct, it follows that inasmuch as there has been no law since the Act of January 8, 1860, authorizing a railroad company or its assignee or the surveyor to number or designate the ownership of the surveys to be made for every such certificate (such authority having been expressly withdrawn from them by the Act of January 8, 1860 and August 16, 1876, and article 4276, Revised Statutes (1879) and conferred upon the commissioner of the General Land Office), and numbering and designation of such surveys or of either of them by the owner or locator of the certificates or by the surveyor, being without authority of and contrary to law, was a nullity and could serve no purpose whatsoever. Such numbering could not and did not have the effect to vest title or color of title to any of the surveys in either the owner of the certificates or in the permanent school fund; nor can such numbering by the locator and surveyor be held to identify, distinguish and designate the surveys in controversy so as to bring them within the protection of section 2, articles 7 and 14 of the constitution or of the Act of February 3, 1883, and to furnish a basis for this suit. Act of January 30; 1854, sec. 3, p. 11 (3 Gammel's Laws, 1455); Act of February 8, 1860, p. 68 (4 Gammel's Laws, 1430); Act of August 16, 1876, p. 153 (8 Gammel's Laws, 898); Rev. Stats. (1879), art. 4276; Day Ld. & C. Co. v. State, 68 Texas, 541; Von Rosenberg v. Cuellar, 80 Texas, 260; New York & T. L. Co. v. Thompson, 83 Texas, 170; Smith v. McGaughey, 87 Texas, 61.

When the law is clear and free from doubt the court will give effect to the legislative intent regardless of the consequences. But when it is susceptible to a double construction the courts will give to the law the construction placed upon it by the officer whose duty it was to construe it, especially after a long lapse of time. To give it a different construction would probably lead to grave and serious consequences. McGee v. Corbin, 96 Texas, 35; Tolleson v. Rogan, 96 Texas, 424; Houston & T. C. Ry. Co. v. The Sate, 95 Texas, 521; Schendell v. Rogan, 94 Texas, 597; Galveston, H. & S. A. Ry. Co. v. The State, 81 Texas, 602; State v. Gunter, 36 Texas Civ. App., 381; Black on Interp. of Laws, 220; 26 Am. & Eng. Ency. of Law, (2d ed.), 633-4-5, and authorities cited thereunder.

Neither the owner nor the State can be permitted to take under both the original and duplicate certificates. The duplicates having been first located and returned to the General Land Office fixed the status of the owner as well as the school fund with reference to both the original

and duplicate certificates, and the State having reserved and utilized two of the surveys under the duplicates for the permanent school fund, can not recover in this suit. Houston & T. C. Ry. Co. v. Carter, 24 S. W. Rep., 1103; Johnson v. Eldridge, 49 Texas, 522.

The Acts of March 2, 1899, and February 23, 1900, being intended not only to quiet the titles throughout the State but also to adjust and settle the interest of the permanent school fund in the public domain as defined by the constitution, were within the power of the Legislature; the State being a trustee for that fund, such statutory settlement is conclusive upon the parties hereto. Act of March 2, 1899, p. 14; Act of February 23, 1900, p. 30; Texas C. Ry. Co. v. Bowman, 97 Texas, 417; 9 Texas Court Reporter, 482.

A patent carries with it, at least, a prima facie right to the land thereby granted by the State to the patentee; and to rebut this presumption, it devolves upon the adverse claimant to clearly establish a prior or superior equitable right; for if both parties have equities, unless there is a decided preponderance between them, the legal title must turn the scale, taking it for granted that it was not obtained through fraud or against equities. Johnson v. Eldridge, 49 Texas 520; Atkinson v. Ward, 61 Texas, 385.

*C. K. Bell,* Attorney-General, and *T. S. Reese,* Assistant, for appellee. —As to all the locations and surveys under the original certificates, in Menard County, what is shown by the record to have been done was sufficient to segregate the land from the public domain and appropriate it to the purpose of the certificates. The failure, if failure there was, to follow the strict letter of the statue, was a mere irregularity, which did not affect the validity of the locations and surveys. Beatty v. Masterson, 77 Texas, 168; Holmes v. Anderson, 59 Texas, 482; Creswell Ranch and C. Co. v. Waldstein, 28 S. W. Rep., 260; Houston & T. C. Ry. Co. v. Carter, 24 S. W. Rep., 1102-1104.

With regard to surveys 15 and 16, located by virtue of certificate 117a, outside of any of the land designated in the file, and not contiguous to each other, but about four miles apart, the failure to locate and survey the two surveys contiguous to each other was an irregularity which did not render the locations and surveys void, but only voidable at the instance of the State, which alone could take advantage of the irregularity. Smith v. McGaughey, 87 Texas, 61; Barrow v. Gridley, 25 Texas Civ. App., 13-15.

As to all of the surveys, if not protected by the written application or file and not appropriated thereby, on account of any irregularities or defects therein, they were protected by the subsequent surveys and return of field notes thereof, and the land embraced in such surveys and field notes was appropriated to the certificates named in the surveys and field notes from the date of the surveys. Forbes v. Withers, 71 Texas, 302-306.

The act of the Commissioner of the General Land Office in, first, accepting, approving and filing the field notes of the sixteen surveys, in which the different surveys were numbered from 1 to 16, without changing the numbers; second, in so delineating the surveys on the

map, using the even numbers as they appeared upon the field notes; and, third, in placing the even numbered sections, as designated by the county surveyor, upon the school land records as school lands was a sufficient compliance with the provisions of the Act of February 8, 1860, requiring the Land Commissioner to number the surveys and reserving the even numbers for the State, and also the provisions of the Act of August 16, 1876, which is article 4276, Revised Statutes of 1879. Art. 4276, Rev. Stats. 1879; Acts 1876, chap. 101, sec. 2, p. 153.

In construing the provisions of section 2, article 14, of the constitution of 1876, requiring all unsatisfied genuine land certificates to be surveyed and returned to the General Land Office "within five years after the adoption of the constitution," the constitution will be considered as having been adopted on the third Tuesday in April, 1876, being the date provided for in the ordinance of the convention for its becoming "the organic and fundamental law of this state." Rev. Stats., 1879, arts. 3880-1-2.

In computing the five years after the adoption of the constitution within which certificates must be surveyed and returned to the General Land Office, the day of the adoption of the constitution, to wit, April 18, 1876, will be excluded. Constitution, art. 14, sec. 2; Rev. Stat., 1879; art. 3880, 3881 and 3882; Burr v. Lewis, 6 Texas, 84; Halbert v. San Saba, etc., Assn., 89 Texas, 232; Hill v. Kerr, 78 Texas, 213-217.

(This last case is so exactly upon the facts that any further citation of authority would seem to be unnecessary; but we cite further Dowell v. Vinton, 1 App. C. C., pp. 140-142; Fairbanks v. Wood, 17 Wend., 329; Williamson v. Farrow, 21 Am. Dec., 497; note to Avery v. Stewart, 7 Am. Dec. 250.)

This provision of the constitution, whether considered as a statute of limitations or as creating a forfeiture of rights under a land certificate for failure to survey and return within the prescribed time, must be construed strictly against the bar of limitations, or the forfeiture of rights and property. O'Connor v. Towns, 1 Texas, 107-115; Winston v. The State, 32 Texas Crim. Rep., 68; Hill v. Kerr, supra; Shepard v. Avery, 89 Texas, 309; Thorne v. Mosher, 20 N. J. Eq., 262.

The duplicate certificates having been issued, located, and surveyed at the instance of the owner of the originals, under the mistaken belief that the originals were lost, the owner of the originals and duplicates had the right, upon discovery of the mistake, to abandon the surveys made under the duplicates and to adopt the surveys made under the originals, and upon such abandonment of the one and adoption of the other the original certificates were restored to their original status as if no duplicates had issued, and the surveys thereunder, both those made for the owner and those made for the State, became in all respects as though no duplicates had issued.

Whatever may have been the irregularities in the original certificates, the application of file, the surveys and the return of the certificates and field notes to the General Land Office, the eight sections of land sued for were lands "surveyed by a railroad company for the benefit of the public free schools of this State," by virtue of certificates either valid or invalid, void or voidable, and as such became "lands belonging to the

public free schools of this state," by virtue of the Act of February 3, 1883, whether previously invested with that character or not, as found by the District Court in its conclusions of law. Act of February 3, 1883, 9 Gammel's Laws (bottom), page 310; Mills v. Needham, 28 Texas Civ. App., 547 (writ of error refused); Barrow v. Gridley, 25 Texas Civ. App., 13-15.

The issuance of the duplicate certificates either affected or did not affect the validity, force and effect of the originals. After the issuance of the duplicates the originals were either valid or invalid, void or voidable; in either case the lands surveyed thereunder for the benefit of the public free schools became the property thereof by virtue of the Act of February 3, 1883, and on that date.

The clear intent of the Act of February 3, 1883, was to appropriate to the public free schools all land theretofore surveyed for the benefit of said fund, regardless of any technical irregularities in the manner of making such surveys or failure to comply with technical provisions of the statute in making the surveys and in returning the certificates and field notes. There is no authority for limiting it to surveys made in strict compliance with the statute.

The eight sections herein sued for, immediately upon their survey for the state by virtue of the alternate certificates issued to the railroad company, by virtue of section 2, article 7, Constitution of 1876, were appropriated to the public school fund. Constitution of 1876, art. 7, sec. 2; Adams v. Railway, 70 Texas, 267-8.

If, on account of any vice in the certificates or their location and survey, the eight sections sued for were not at once upon such survey appropriated to the school fund, they were so appropriated by the Act of February 3, 1883. (Rev. Stat., art. 4265.)

In either case the Legislature could not by subsequent legislation change or destroy the character of these lands as public school lands, as is contended by appellant was done by the Act of 1900, nor was it the intention of that Act to do so, or to attempt to do so. Act March 3, 1899, chap. 16; Acts 26th Legislature; Act February 23, 1900, chap. 11, Acts 1st Called Session 26th Legislature; Kuechler v. Wright, 40 Texas, 606.

If, by mistake of the Land Commissioner, these lands were not charged to the school fund, in the adjustment made by the Act of February 23, 1900, and the school fund by said adjustment was in fact compensated therefor, this could in no wise affect the character of the lands as school lands. Same authorities.

The lands in controversy having been appropriated by the location and survey of the same for the state under the alternate railroad company certificates, or at least by the provisions of the Act of February 3, 1883, to the school fund, the location of the veteran donation certificates thereon and the patents issued upon such locations, under which defendants claim, are absolutely void and conveyed no title, legal or equitable. Constitution 1876, sec. 2, art. 14; Adams v. Railway, 70 Texas, 252-268; Besson v. Richards, 24 Texas Civ. App., 68, and cases cited.

The locations having been made and patents having been issued upon land already appropriated by reservation for the benefit of the public school fund, at the date of the location of the veteran donation certifi-

cates, the patents issued thereon were void. Sherwood v. Fleming, 25 Texas Sup., 427-8; Todd v. Fisher & Miller, 26 Texas, 241; Woods v. Durret, 28 Texas, 437; Day L. & C. Co. v. The State, 68 Texas, 541; Burfenning v. Chicago, etc., Railway Co., 163 U. S., 321-323.

In such case there was no estoppel against the state arising from the unauthorized act of the Land Commissioner in issuing the patents. Day L. & C. Co. v. The State., 68 Texas, 553.

EIDSON, ASSOCIATE JUSTICE.—This was an action of trespass to try title brought by the State against the appellants, Meta Eyl, Walter Tips, Charles Fowler, Johanna Runge, Anna Stromeyer and others, assignees of the Las Moras Ranch Company, to recover eight certain sections of land in Menard County, surveyed for the public school fund, by virtue of certain alternate certificates issued to the Buffalo Bayou, Brazos & Colorado Railroad Company. In addition to the usual allegations appropriate to an action in trespass to try title, it is alleged that the land sued for is covered by certain locations and surveys upon which patents have issued, under which defendants (appellants) claim title; that said locations, surveys and patents are subsequent to the survey of the lands for the school fund, and are null and void; that they are a cloud upon the title of the State, and interfere with the sale and disposition of the lands as public free school lands, with prayer for a recovery of the land, for cancellation of the patents aforesaid, and for removal of cloud from appellee's title and for general relief.

Defendants in the court below, appellants herein, pleaded not guilty and that the locations and surveys for the original certificates in Menard County, under which plaintiff (appellee) claims title were void, because (1) their duplicates had been, just prior thereto, located in Kinney County; (2) the surveys in Menard County for the original certificates were not made in conformity with law, and (3) that when filed in the land office they were barred by the Constitution. They also alleged as defenses that said surveys have never been numbered by the Commissioner of the General Land Office and notice of that fact given the surveyor, and have never been reversed for the school fund; that in the final adjustment and partition of the joint interest of the State and that fund, the surveys in controversy were taken into account and charged to the State as having been alienated by it to those under whom defendants claim and hold and for other purposes; that under said adjustment and partition in the Act of February 23, 1900, the State granted to that fund an additional acreage from the unappropriated public domain, equivalent to the surveys in controversy, and also to those located for the duplicate certificates in Kinney County; and that the lands in controversy were duly patented to the Las Moras Ranch Company in 1884, by virtue of the location and survey of certain veteran donation certificates made in 1883, under whom defendants hold title.

The case was tried upon an agreed statement of facts before the court without a jury, and judgment rendered for the State for all of the land sued for, for cancellation of the patents and for removal of cloud upon title, etc.

We find the following material facts based upon the statement of facts contained in the record which was adopted by the court below as its findings of fact:

On January 1, 1872, the Commissioner of the General Land Office issued to the Buffalo Bayou, Brazos & Colorado Railroad Company eight land certificates for 640 acres each, numbered 111a to 118a, both inclusive; and on October 3, 1879, the owner filed them with the county surveyor of Menard County for location. On and prior to the date of filing said certificates with said surveyor they were the property of the Galveston, Harrisburg & San Antonio Railway Company, whose ownership continued until July 11, 1884. During said time T. W. Pierce was president of said company, and A. J. Fry was its land agent. In 1880 A. J. Fry, as the agent of the owner, advertised the loss of the original certificates, and on September 27, 1880, the Commissioner of the General Land Office issued and delivered to him duplicates thereof, numbered 35-204 to 35-211, both inclusive. On February 25, 1881, said Fry as the agent of the owner, under the mistaken belief that the originals were lost, located said duplicates in Kinney County. Two surveys were made for each of them between March 15 and 26, 1881, and the field notes with the duplicate certificates and written entries or locations were returned to and filed in the General Land Office on April 16, 1881, and entered on the records and maps of the General Land Office. Two of the surveys so made for said duplicate certificates, one for 152 acres and the other for 354 94-100 acres, were afterwards utilized for the benefit of the permanent school fund, one having been sold and the other leased as school land. The surveys made for the other duplicates were in conflict with prior valid grants.

On March 9, 1881, R. P. Beddau, acting as the agent of James Converse, filed with the county surveyor of Menard County a written application, by which he located said original certificates 111a to 117a, both inclusive, numbering the lands located for each of said certificates, and describing each location by metes and bounds. Said Converse was at that time the agent of the owner of said certificates. No entry or written application was made for certificate 118a. Between March 9 and 12, 1881, the surveyor of Menard County made sixteen surveys for said certificates, including certificate 118a. With the exception of the survey for certificate 116a, the surveys made for the other certificates respectively were made on lands other and different from those upon which they had been respectively located by the application; that is to say, surveys were made for certificate 118a on land located by the application for certificate 111a; surveys were made for certificate 114a on land located by the application for certificate 112a; surveys were made for certificate 113a on land located by the application for certificate 114a; surveys were made for 111a on land located by the application for certificate 113a; surveys were made for 115a on land located by the application for certificate 117a; surveys were made for 116a on land located for it by the application; the surveys made for certificate 112a were made on land located by the application for certificate 113a. The call for the southeast corner of survey No. 4 as the beginning cor-

ner of survey No. 5 in the application being a mistake, and being intended for the northeast corner of survey No. 4. The surveys for certificate 117a are on land not located for it or for any other certificate by the application, and are about four miles apart. The surveys thus made, together with said certificates and the application locating them, were returned to and filed in the General Land Office April 18, 1881. The different surveys made for the original certificates, except 117a, covered substantially the entire body of vacant land which the descriptions in the entries or applications taken in the aggregate covered.

In 1902 the surveyor of Menard County filed in the General Land Office corrected field notes of surveys 10, 8 and 16, for certificates 111a, 113a and 117a; but the only changes made were to free them from conflict with older surveys, and such corrected field notes covered no land not embraced in the original field notes.

At the time A. J. Fry made application for and procured the duplicate certificates and filed same with the surveyor of Kinney County and made application for surveys by virtue thereof, he supposed the originals were lost, but as soon as he learned they were not, he on the 14th day of August, 1882, demanded patents on the surveys made thereunder in Menard County, and abandoned the duplicate certificates and their location. No patents have been issued to the owner of said original and duplicate certificates to any of the surveys made thereunder.

The county surveyor of Menard County numbered the surveys made by him by virtue of said certificates 111a to 118a, both inclusive, from 1 to 16, both inclusive. The Commissioner of the General Land Office did not personally select and designate the even numbered sections for the school fund, but there was a custom at the time in the General Land Office for the draughtsman to adopt the designation and numbering of such surveys as made by the surveyor and appearing in the field notes, and this was done with reference to these surveys.

On February 4, 1883, applications were filed with the county surveyor of Menard County for the location and survey of the veteran donation certificates described in plaintiff's petition and in defendants' answer; that surveys for each of said certificates were made between October 28 and November 3, 1883, and said applications, field notes and certificates were all returned to and filed in the General Land Office November 20, 1883.

All of said surveys were patented to the Las Moras Ranch Company, assignee, July 11, 1884, except the Nancy Pierson and H. P. Redfield surveys, which were patented to the same company as assignee September 16 and 17, 1884; that said veteran donation certificates were located and the several surveys made thereunder upon both the even and odd numbered sections surveyed for said original Buffalo Bayou, Brazos & Colorado Railroad Company certificates; that defendants are the vendees of said Las Moras Ranch Company; that said surveys made under said original certificates issued to the Buffalo Bayou, Brazos & Colorado Railroad Company, were placed on the school land records, and were delineated upon the official map of Menard County in use in the General Land Office when the field notes were returned to that office, and so remained until the making of a new map in 1894. The surveys made

by virtue of the veteran donation certificates above mentioned were delineated on the official map of Menard County by the Commissioner of the General Land Office when said new map of that county was made in 1894, and they alone were platted thereon. Said lands have been occupied by the appellants and their vendors continuously since the issuance of said patents, and by them all taxes thereon have been regularly paid as they have accrued since the same were patented. No suit has been instituted against them by anyone for the recovery of said lands in part or in whole, until the present action.

On the final partition and adjustment of the joint interests of the State and permanent school fund in the public domain, in pursuance to the Act of March 3, 1899, the land surveyed for the original certificates issued to said Buffalo Bayou, Brazos & Colorado Railroad Company were charged to the State; and in the statutory grant of February 23, 1900, the permanent school fund was compensated therefor by receiving from the unappropriated public domain an additional amount of land equal in acreage to that surveyed for said original certificates in Menard County; that neither the owner of said original certificate 111a to 118a, both inclusive, issued to the Buffalo Bayou, Brazos & Colorado Railroad Company, nor the school fund, has received any land thereunder, except as hereinbefore stated.

The conclusions of law of the court below are as follows: "The land, title to which is here in controversy, had, prior to the locations and surveys under which defendants claim title, been surveyed for the benefit of the public free schools of this State, by virtue of the locations and surveys for the land certificates numbered 111a to 118a, both inclusive, issued to the Buffalo Bayou, Brazos & Colorado Railroad Company, as alleged in plaintiff's petition. The provisions of the Act of February 3, 1883 (Rev. Stat., art. 4265), and the said locations and surveys for the public free schools of the State, operated to fix and had fixed the status of said lands as property of the public free schools at the dates of the locations and surveys under which the defendants claim title, and there was no authority of law for the locations, surveys and patents under which defendants claim. The plaintiff is therefore entitled to judgment for the land sued for and for cancellation of the patents under which defendants claim."

*Opinion.*—Appellants by their first assignment of error and the propositions submitted thereunder, contend (1) that these surveys made on different land to that which the entry or application described and applied for such surveys to be made upon, were void on account of nonconformity with such entry and application; (2) the surveys made for certificate 117a, being upon land not applied for nor described in the entry or application, and not being contiguous, were void; (3) all the locations by virtue of the original certificates were void because their duplicates had been previously located in another county.

It appears that the surveys made for the original certificates, except 117a, substantially covered the body of land aggregated by the respective descriptions contained in the entry and application filed with the surveyor; and we are of the opinion that the failure of the surveyor in

making the respective surveys for each certificate to conform to the respective descriptions of land embraced in the entry and application, is simply an irregularity which would not invalidate the surveys. Creswell Ranch and Cattle Co. v. Waldstein, 28 S. W. Rep., 260.

The certificate No. 117a being deposited with the surveyor by the agent of the owner evidently for the purpose of location and survey, the failure on the part of the owner or his agent to make a written entry or application describing the land applied for by virtue of this certificate would be an irregularity which would not render void the location and survey made by the surveyor by virtue of said certificate. The owner may adopt the location made by the surveyor and ratify all the proceedings leading to the acquisition of the land. Beatty v. Masterson, 77 Texas, 168.

The surveys made by virtue of this certificate not being contiguous did not render them void. This was an irregularity of which the State alone, if disposed, might have taken advantage. Smith v. McGaughey, 87 Texas, 61; Barow v. Gridley, 25 Texas Civ. App., 13. It appears from the record that the duplicate certificates located in Kinney County were procured and surveys made by virtue thereof under the mistaken belief that the originals were lost; but upon discovery of their existence and location in Menard County, the agent of the owner who procured the duplicates and had them located and surveyed in Kinney County abandoned such locations and surveys and proceeded to take steps to have the surveys made by virtue of the originals in Menard County patented. It further appears that the locations made by virtue of said duplicates were in conflict with prior valid locations, except two surveys, one of 304 acres and the other 789 88-100 acres, one-half of each of which was surveyed for the school fund, and which are not involved in this suit.

Under these circumstances, we are of the opinion that the locations and surveys made by virtue of the original certificates in Menard County were valid, and not in any manner affected by the procurement of the duplicates and their location or attempted location in Kinney County. Houston & T. C. Ry. Co. v. Carter, 24 S. W. Rep., 1103.

By their second assignment of error, appellants contend that the lands in controversy not having been numbered, designated and reserved for the permanent school fund by the personal act of the Commissioner of the General Land Office, none of them became so identified as the property of said fund that an action of trespass to try title could be predicated thereon. It appears that the Commissioner of the General Land Office did not personally select and designate the even numbered sections for the State, but that there was a custom in the General Land Office for the draughtsman to adopt the designation and numbering of such surveys as made by the surveyor and appearing in the field notes, and that this was done with reference to these surveys. This, in our opinion, was a sufficient compliance with article 4276, Revised Statutes of 1879, which was the law applicable to the subject at that time.

Appellants' third assignment of error is as follows: "The court erred in not finding that the certificates and surveys under which plaintiff claims were not returned to the General Land Office within five

years from the adoption of the Constitution; and for that reason the certificates became forever barred and the surveys void, and all proceedings of whatever kind and by whoever had in reference to said certificates after their issuance, and the said surveys prior and subsequent to their return to the General Land Office, were ineffective for any purpose whatever." And under this assignment appellants submit the following proposition: "The length of time—five years from the adoption of the Constitution—prescribed for the survey and return of the certificates to the General Land Office (Const., art. 14, sec. 2) expired at midnight of April 17, 1881."

The original certificates were issued January 1, 1872. The Constitution was adopted or ratified by the people on the third Tuesday in February, 1876; it was declared adopted by proclamation of the Governor, March 4, 1876, and effective April 18, 1876. The certificate with the field notes of the surveys made for them were returned to and filed in the General Land Office on April 18, 1881. Section 2, article 14, State Constitution of 1876, provides, "All unsatisfied genuine land certificates now in existence shall be surveyed and returned to the General Land Office within five years after the adoption of this Constitution or be forever barred." Articles 3880, 3881 and 3882 of the Revised Statutes of 1879 are as follows:

"Article 3880. All unsatisfied genuine land certificates barred by article 10, section 4 of the Constitution of 1869, by reason of the holders or owners thereof failing to have them surveyed and returned to the Land Office by the 1st day of January, 1875, are declared to have been revived on the 18th day of April, 1876.

"Article 3881. All unsatisfied genuine land certificates in existence on the 18th day of April, 1876, shall be surveyed and returned to the General Land Office within five years thereafter, and on failure thereof shall be forever barred.

"Article 3882. All genuine land certificates issued by the State after the 18th day of April, 1876, shall be surveyed and returned to the General Land Office within five years after issuance, and on failure thereof shall be forever barred."

These articles of the statute enacted soon after the adoption of the Constitution indicate that the legislative construction of this article of the Constitution is that the five years within which the certificates are to be surveyed and returned with the field notes of such surveys to the land office, are to be computed from and after the 18th day of April, 1876. The articles quoted evidently were intended by the Legislature to conform to and be in harmony with the Constitution. We think it reasonably clear from the language of the Constitution, construed in connection with the above quoted legislative enactments, that the five years within which certificates must be surveyed and returned to the General Land Office are to be computed from and after the 18th day of April, 1876. This being true, the question for our determination then is whether or not the day of the adoption of the Constitution, that is, April 18, 1876, should be excluded in computing the five years. The decisions of our courts appear to be uniform in holding that when the time within which an act is to be done is to be computed from and after a certain

day, the rule of construction is to exclude that day. Hill v. Kerr, 78 Texas, 213; Halbert v. San Saba, etc., Assn., 89 Texas, 232; Burr v. Lewis, 6 Texas, 84; Dowell v. Vinton, 1 App. Civ. Cas., 140-142. And another rule of construction is that in case of doubt, that construction will be adopted that will protect rights and save forfeitures. O'Connor v. Towns, 1 Texas, 107-115; Winston v. State, 32 Texas Crim. Rep., 68; Hill v. Kerr, supra; Sheppard v. Avery, 89 Texas, 300. We are of the opinion that in computing the five years after the adoption of the Constitution within which certificates must be surveyed and returned to the General Land Office, the day of the adoption of the Constitution should be excluded. Therefore, the certificates under which appellee claims with their field notes of the surveys made for them, were returned to and filed in the General Land Office in due time.

Appellants' fifth assignment of error has been disposed of in passing upon their first assignment of error, and it is overruled.

Appellants' fourth assignment of error is as follows: "The court erred in not finding that the Act of February 3, 1883, applies to such lands only as had been located, surveyed, returned to the General Land Office and numbered in the manner and form and within the time required by law—no question, however, being permitted as to the original certificates, whether valid or invalid, void or voidable; and therefore the pretended claim or title of the permanent school fund to the surveys in controversy is not protected by said act."

The act referred to is as follows: "Any and all public lands heretofore surveyed by railroads or corporations or any company or any person in this State, for the benefit of the public free schools of this State, by virtue of any certificate, valid or invalid, void or voidable, be and the same are hereby declared to be lands belonging to the public free schools of this State." Rev. Stat., art. 4265. We are of opinion that said act was intended to apply to all lands theretofore surveyed for the benefit of the public free schools, and to appropriate such lands to that fund, and that it applies to surveys in which there are irregularities in the manner of making same, or a failure to comply with the statutory provisions with reference to the entry or application for survey, or in returning the certificate and field notes of such surveys to the General Land Office. Mills v. Needham, 28 Texas Civ. App., 547; Barrow v. Gridley, 25 Texas Civ. App., 13.

Appellants' sixth assignment of error is as follows: "The court erred in not finding that in the final adjustment and partition between the State and the permanent school fund of the lands jointly owned by the State and that fund, as provided in the Acts of March 2, 1899, and February 23, 1900, the lands in controversy were charged to the State as having been alienated and patented to those under whom defendants claim and hold, and that the permanent school fund was compensated for the same by a grant to said fund of an acreage equal in amount to the surveys in controversy; and therefore plaintiff is barred recovery herein."

We do not think this assignment is well taken. The lands in controversy, immediately upon the survey for the State of the alternate certificates issued to the Buffalo Bayou, Brazos & Colorado Railroad Com-

pany, by virtue of section 2, of article 7, of the Constitution of 1876, were appropriated to the public school fund. If, however, on account of any defects in the certificates or irregularities in their location or survey, said lands were not at once, upon such survey, appropriated to the school fund, they were so appropriated by the Act of February 3, 1883; and in either case the Legislature could not, by subsequent legislation, change or destroy the character of these lands as public school lands. And if by a mistake of the Land Commissioner these lands were not charged to the school fund in the adjustment made by the Act of February 23, 1900, and the school fund by said adjustment was in fact compensated therefor, this could in nowise affect the character of the lands as school lands. Const., 1876, art. 7, sec. 2; Adams v. Houston & T. C. Ry. Co., 70 Texas, 267; Kuechler v. Wright, 40 Texas, 606.

By their ninth assignment of error, appellants contend that the court erred in rendering judgment for appellee for the land sued for and for cancellation of the patents under which appellants claim. Under this assignment appellants submit the proposition that a patent carries with it at least a prima facie right to the land thereby granted by the State to the patentee; and to rebut this presumption it devolved upon the adverse claimant to clearly establish a prior or superior equitable right. For if both parties have equities, unless there is a decided preponderance between them, the legal title must turn the scale, taking it for granted that it was not obtained through fraud or against equities. At the time of the location of the veteran donation certificates under which appellants claim the land in controversy, it had already been appropriated to the public free school fund, either by the locations and surveys by virtue of the certificates under which appellee claims or by the Act of February 3, 1883; and therefore, was not subject to appellants' location; and the records of the General Land Office and of the county surveyor of Menard County at that time gave notice of such prior location and surveys and consequent appropriation. Const. 1876, sec. 2, art. 14; Adams v. Houston & T. C. Ry. Co., 70 Texas, 252; Besson v. Richards, 24 Texas Civ. App., 68. The patents issued to appellants having been issued for land already located for and appropriated to the public school fund at the time of the locations and surveys upon which said patents were based, were void and conferred no rights or equities upon the patentees. The unauthorized act of the Commissioner of the General Land Office in issuing such patents could not operate as an estoppel against the State. Sherwood v. Fleming, 25 Texas Supp., 427; Todd v. Fisher & Miller, 26 Texas, 241; Woods v. Durrett, 28 Texas 437; Day Land and Cattle Co. v. State, 68 Texas, 541-553.

Finding no reversible error in the record, all of appellants' assignments of error are overruled, and the judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.