

# THE ATTORNEY GENERAL
## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

March 3, 1969

Honorable William S. Heatly
Chairman, Appropriations Committee
House of Representatives
Capitol Station
Austin, Texas 78711

Opinion No. M-347

Re: Validity of House Bill
No. 232 concerning pro-
posed legislation which
would provide that all
mineral leases, rentals
and bonuses on public
school lands and 72-1/2%
of all oil and gas royal-
ties on such land be de-
posited to the available
school fund and be made
available for current
spending by the Legis-
lature.

Dear Mr. Heatly:

You have requested our opinion on the validity of House
Bill No. 232 of the 61st Legislature. Section 1 of House Bill No.
232 provides:

"Section 1. All moneys received by the state
as mineral lease and prospect bonuses and rentals,
and 72-1/2 percent of the royalties under a lease
of public school lands and lands which are a part
of the permanent school fund executed for the pur-
pose of mineral exploration and development, shall
be deposited to the available school fund. The re-
maining 27-1/2 percent of the royalties received
by the state shall be deposited to the permanent
school fund."

Section 2 of Article VII of the Constitution of Texas
established a permanent school fund by dedicating lands to the
fund and further providing:

". . .and all sums of money that may come
to the State from the sale of any portion of
the same, shall constitute a perpetual public
school fund." (Emphasis added.)

- 1711 -

Section 4 of Article VII of the Constitution of Texas provides that land set apart to the permanent school fund:

". . .shall be sold under such regulations, at such times, and on such terms as may be prescribed by law . . ."

Although Section 2 of Article VII of the Constitution of Texas had already provided that money received from the sale of any portion of the land set apart for the schools of the State was to constitute a perpetual school fund, Section 5 of Article VII of the Constitution of Texas reiterates this view in the following language:

"The principal of all bonds and other funds, and the principal arising from the sale of the lands hereinbefore set apart to said school fund, shall be the permanent school fund. . ."

Section 5 of Article VII of the Constitution of Texas further provides that:

". . . no law shall ever be enacted appropriating any part of the permanent or available school fund to any other purpose whatever . . ."

Thus, by virtue of the provisions of Sections 2, 4 and 5 of Article VII of the Constitution of Texas, all proceeds arising from a sale (or mineral lease) of any part of the land dedicated to the permanent school fund must be deposited in the permanent school fund, as such fund is constitutionally protected. From 1891 until 1964, one percent (1%) annually of the total value of the permanent school fund could have been transferred to the available school fund; however, this authorization to transfer was removed with the adoption of the amendment to Section 5 of Article VII of the Constitution of Texas (SJR No. 6 of the 51st Legislature, Regular Session, adopted November 3, 1964.). Subsequent to that date, no part of the permanent school fund is authorized to be transferred. It is well settled in Texas that oil and gas in place are part of the realty. Hager v. Stakes, 116 Tex. 453, 294 S.W. 835 (1927); Stephens County v. Mid-Kansas Oil and Gas Co., 113 Tex. 160, 254 S.W. 290, 29 ALR 566 (1923); State v. Hatcher, 115 Tex. 332, 281 S.W. 192 (1926). Thus, it is settled that an oil and gas lease is an interest in land. Phillips Petroleum Co. v. Mecon, 375 S.W.2d 335 (Tex.Civ.App. 1964); Mills v. Brown, 159 Tex. 110, 316 S.W.2d 720 (1958). "In Texas, the standard exploration development lease is tantamount to a sale and the 'purchase price' for the

execution of a lease includes in addition to any bonus and delay rentals, the agreed royalty." Kounty v. Kirby Lumber Corp., 153 F.2d 695 (5th Cir. 1946), cert.den. 329 U.S. 713; Sheppard v. Stanolind Oil & Gas Co., 125 S.W.2d 643 (Tex.Civ. App. 1939, error ref.); Ehlinger v. Clark, 117 Tex. 547, 8 S.W.2d 666 (1928).

Furthermore, it was held that the lands included in the dedication to the permanent school fund became a part of such fund and the Legislature thereafter was, and is, precluded from a disposition of this land except as authorized under this Constitution. Eyl v. State, 84 S.W. 607 (Tex.Civ.App. 1904, error ref.).

In construing Sections 10, 11, 12 and 15 of Article VII of the Constitution of Texas, (said sections being similar in nature to Sections 2, 4 and 5, but pertaining to the permanent University fund), the Texas Supreme Court in State v. Hatcher, supra, has answered the question here presented in holding unconstitutional a like attempt to direct royalty income from the permanent University fund. We quote, in part, from the opinion of the Supreme Court in the case of State v. Hatcher, supra:

"Our view of the situation presented in this case coincides with the views of the Supreme Court of Wyoming, as shown by its opinion in the case of State v. Snyder, 212 P. 758, 29 Wyo. 163. We quote from that case as follows:

"'. . . Oil and gas, while in situ, are part of the realty; part of the corpus of the land. When a portion of it is taken away, the proceeds necessarily arise out of the corpus, and it is humanly impossible to change that simple, plain, physical fact. . . . Whether the oil be taken out of the ground pursuant to a license, lease, sale, or any other grant, or without any authority whatever, could not in the slightest degree affect the physical fact that it comes from the corpus of the land. If taken and disposed of at all, the effect is clearly a permanent disposition of that much of the corpus, the principal, of the land, and, irrespective of the authority pursuant to which that is done, the proceeds must go to the beneficiaries according to the rights existing between them-- in this case to the permanent fund to which,

according to the intention of the Consti-
tution, the corpus of the property is dedi-
cated--and we can by no subterfuge take it
therefrom by simply saying that royalties
are rents.'

"This Wyoming case bears a striking resem-
blance to the case at bar. . . .

". . .

"American courts, as shown in the opinion
in the Wyoming case, supra, follow the English
holding that minerals are a part of the soil and
when once removed are gone forever.  In other
words, there is a final and permanent taking of
a portion of the land.

". . .

"Being thoroughly convinced that the royal-
ties from University lands are a part of the
permanent fund of that institution, we think they
should be placed there, and thereafter invested
according to the express provisions of our state
Constitution.  We think the Act of April 3, 1925,
in so far as it affects the question herein dis-
cussed, contravenes the Constitution itself, and
is therefore null and void."

Article VII, Section 6 of the Texas Constitution is
similar in nature to Sections 2, 4 and 5 (the permanent school
fund) and Sections 10, 11, 12 and 15 (the permanent University
fund), but pertains to the county permanent school fund.  At-
torney General Gerald Mann in construing Article VII, Section
6 of the Constitution in his Opinion No. O-4933 (1942) stated
in part:

"Second, we presume that the county followed
Article 5400a, Vernon's Annotated Civil Statutes,
in making the mineral leases.  We are of the opin-
ion that the 'delay rental' under the mineral lease
should go into the permanent school fund and not
the available fund.  This is necessary because of
the nature of a mineral lease.  'By the great weight
and majority of the decisions of Texas Courts, the
ordinary form of oil and gas lease is not a lease
at all; on the contrary, it is a conveyance of an

interest in land and, as such, operates to sever this mineral estate from the surface.' 31 Texas Jurisprudence 574-576, Section 39. The instant an oil and gas lease is executed and delivered the lessee becomes the owner of the minerals in place and subject to be taxed therefor. Stephens County v. Mid-Kansas Oil and Gas Company, 113 Texas 160, 254 S.W. 290. The 'bonus' or 'rentals' which the lessee pays are as much a part of the proceeds of the sale as the 'royalty' and under Article 7, Section 6 of the Texas Constitution, the entire consideration for the sale constitutes a trust for the benefit of public schools and must be placed in the county permanent school fund. Theisen vs. Robison, 117 Texas 489, 8 S.W.(2d) 646.

"We, of course, hold that the royalties should also be deposited in the county's permanent school fund."

In view of the foregoing authorities, it is our opinion that anything which the state receives, in whatever form, in consideration of the oil taken or to be taken from the dedicated lands constitutes a part of the purchase price for the sale of such land or a portion thereof, and therefore such proceeds must be placed in the permanent school fund. Sheppard v. Stanolind Oil & Gas Co., supra, 125 S.W.2d 643, 647.

Therefore, House Bill No. 232 if enacted, would be in violation of Sections 2, 4 and 5 of Article VII of the Constitution of Texas.

## S U M M A R Y

House Bill No. 232, which provides that all mineral leases, rentals and bonuses on public school lands and 72-1/2% of all oil and gas royalties on such lands be deposited to the available school fund, if enacted, would be in violation of Sections 2, 4 and 5 of Article VII of the Constitution of Texas, for the reason that the same constitutes a sale of a part of the corpus and, as such, the proceeds are required to be placed in the permanent school fund, rather than the available school fund. State v. Hatcher, 115 Tex. 332, 281 S.W. 192 (1926).

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by John Reeves
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
George Kelton, Vice-Chairman
Houghton Brownlee
Alfred Walker
Harold Kennedy
Pat Bailey
John Banks

W. V. GEPPERT
Staff Legal Assistant