CROSBY v. ARDOIN et al.†

(Court of Civil Appeals of Texas. El Paso. Feb. 1, 1912. Rehearing Denied March 20, 1912.)

1. TRESPASS TO TRY TITLE (§ 40*)—EVIDENCE —PARTITION DECREE.

Where title to property involved in trespass to try title was apparently absolutely vested in C., who was a party to a partition suit in which a decree was rendered, divesting all his interest in the land and vesting the same in T., the decree was admissible to show the divestiture of C.'s title, though the plaintiff in trespass to try title was a stranger to the decree.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 55–61; Dec. Dig. § 40.*]

2. INFANTS (§ 99*)—CONVEYANCE OF LAND— MINORITY.

Where a partition decree vested certain property in a minor, it would be presumed that he was of age when he subsequently conveyed the property to another.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 294; Dec. Dig. § 99.*]

3. INFANTS (§ 31*)—DEED—VALIDITY.

The execution of a deed by a minor is voidable only, and his minority can be taken advantage of only by himself.

[Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 46, 50–63; Dec. Dig. § 31.*]

4. APPEAL AND ERROR (§ 742*) — ASSIGNMENTS OF ERROR—PROPOSITIONS.

An assignment of error, complaining of the action of the trial court in refusing to direct a verdict for plaintiff for four separate and distinct reasons, and submitted as a proposition, is improper as complex and multifarious.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Writ of error denied by Supreme Court.

5. APPEAL AND ERROR (§ 742*) — ASSIGN-MENTS OF ERROR—PROPOSITIONS.

An assignment claimed that the court erred in admitting in evidence a certified copy of the transfer of an original headright certificate for reasons set forth in the first bill of exceptions. The assignment was submitted as a proposition, and the bill of exceptions showed that the instrument was objected to for 12 different reasons. *Held*, that as a proposition the assignment was improper.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

6. EVIDENCE (§ 372*)—TRANSFER OF HEAD-RIGHT CERTIFICATE—AFFIDAVIT OF FORGERY—EFFECT.

Where plaintiff in trespass to try title filed an affidavit of forgery as to a transfer of an original headright certificate under which defendants claimed, the affidavit of forgery merely imposed on defendants the burden of proving the instrument as at common law, and it appearing on its face that it had been recorded for more than 50 years, its authenticity being proved by a certificate of acknowledgment, it proved itself as an ancient document and the certified copy was therefore properly admitted.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1613–1627; Dec. Dig. § 372.*]

7. EVIDENCE (§ 96*)—FORGED DOCUMENTS—AFFIDAVIT—EFFECT—"PRIMA FACIE CASE."

The filing of an affidavit of forgery against a document casts on the party claiming thereunder the burden of proving its execution as at common law, so that, when the party claiming under it has prima facie established the instrument, the attacking party may proceed to sustain the plea of non est factum by any lawful testimony (citing Words and Phrases, vol. 6, p. 5549).

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 119–121; Dec. Dig. § 96.*]

8. TRESPASS TO TRY TITLE (§ 44*)—ASSIGN-MENT OF HEADRIGHT CERTIFICATE — EVI-DENCE.

In trespass to try title, evidence *held* insufficient to require submission to the jury of the issue of forgery of an assignment of an original headright certificate.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 66; Dec. Dig. § 44.*]

9. HUSBAND AND WIFE (§ 273*)—COMMU-NITY PROPERTY—AUTHORITY TO SELL—PRE-SUMPTION.

Where a woman executed a deed as survivor of the community estate of her deceased husband, and the marriage and death of the husband appeared from evidence outside the deed, and it was also proved that the records of the county had been destroyed by fire, it would be presumed that the property was community property and that the grantor had authority to sell the same as survivor thereof.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1008–1024; Dec. Dig. § 273.*]

10. APPEAL AND ERROR (§ 1051*)—EVIDENCE—PREJUDICE.

Where it was shown by competent testimony that the grantor in a deed had been married to H., that H. had died, and that the conveyance was made by the grantor as survivor of the community estate, the admission of certified copies of certain proceedings to substitute papers in the administration of the community estate of the grantor's husband in place of originals which had been destroyed by fire, if erroneous, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

11. TRESPASS TO TRY TITLE (§ 36*)—DEMAND FOR ABSTRACT—WAIVER.

Where, in trespass to try title, plaintiff served notice on defendant to file an abstract, but before the expiration of 20 days after such service the case was called for trial, and plaintiff made no application for a postponement, her right to the filing of an abstract was waived.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 38; Dec. Dig. § 36.*]

12. TRESPASS TO TRY TITLE (§ 40*)—EVIDENCE—AFFIDAVITS.

Where the holder of an original headright certificate, claiming that the same had been lost, applied for a duplicate, and to obtain it filed in the land office an affidavit averring such loss and that he had never transferred the same, a certified copy of such affidavit, together with a copy of the advertisement of such loss in a newspaper, and a certificate of the publisher of such advertisement, on which a duplicate certificate was issued under which plaintiff claimed title, were only evidence of a compliance with the requirements necessary to the issuance of a duplicate certificate, and were not admissible in trespass to try title to show the loss of the original and that it had not been transferred.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 99; Dec. Dig. § 40.*]

13. APPEAL AND ERROR (§ 742*)—ASSIGN-MENTS OF ERROR—FORM—PROPOSITIONS.

Under Civil Appeals Rule 30 (67 S. W. xvi), an assignment of error can be submitted as a proposition only when it discloses the exact point sought to be raised.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

14. EVIDENCE (§ 357*) — LETTERS — MEMO-RANDA.

Where an original headright certificate was assigned to H., and H.'s son wrote a letter to the land commissioner requesting information as to whether any land had been located thereunder, a memorandum on the margin of the letter was properly excluded.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1492–1499; Dec. Dig. § 357.*]

15. PUBLIC LANDS (§ 178*)—LANDS OF STATE—HEADRIGHT CERTIFICATE—TRANSFER.

A headright certificate, before the location of land thereunder, is personal property within the rule that a purchaser of personalty can acquire no better title than his vendor has, and that equity will not afford protection to an otherwise innocent purchaser, except where some element of estoppel exists and would operate against the owner.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

16. PUBLIC LANDS (§ 178*) — HEADRIGHT CERTIFICATE—TRANSFER — SUBSEQUENT IS-SUANCE OF DUPLICATE—EFFECT.

The original owner of a headright certificate having transferred the same to H. in 1839, and having obtained a duplicate in lieu of the original from the land office October 30, 1851, on proof that the original had been lost and had not been transferred, no title to land located under the duplicate passed to an assignee thereof as against those holding under the assignee of the original.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

17. PUBLIC LANDS (§ 178*)—LANDS OF STATE — HEADRIGHT CERTIFICATE — LOCATION OF LAND—RIGHTS OF ASSIGNEE.

A headright certificate, having been issued to S., was transferred to H. with a gen-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

eral warranty. Upon subsequent proof of loss of the original without transfer, S. obtained a duplicate from the land department and assigned the same to J. and others, under which the land in controversy was located. *Held,* that the duplicate was voidable as against H., and while he could not be divested of his rights under the original by the issuance of the duplicate, and, if he saw fit, might have located the original, yet, when the duplicate was located and the land patented, H. and his vendees were entitled to claim such land.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

18. PUBLIC LANDS (§ 178*)—STALE DEMAND. Where both the legal and equitable title to land located under a headright certificate was vested in defendants, claiming under a transfer of the original certificate by the holder in 1839, the doctrine of stale demand was not applicable to defeat their claim as against one claiming under a duplicate certificate wrongfully issued.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

19. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—PROPOSITIONS. Plaintiff assigned as error that the court erred in refusing to instruct on the issues called to the court's attention in the third special instruction requested by plaintiff and refused, as fully shown by the instruction, and by plaintiff's eighth bill of exceptions. The assignment was submitted as a proposition, and the instruction referred to was a mere request that the court submit to the jury various issues of forgery, etc. *Held,* that such assignment was an attempt to raise all material issues in the appeal without separate propositions, and was therefore bad.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

McKenzie, J., dissenting.

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Trespass to try title by Josephine Crosby against Theo. W. Ardoin and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Jay Good and Stanton & Weeks, for appellant. Robert T. Neill and De Montel & Fly, for appellees.

HIGGINS, J. This is an action of trespass to try title by appellant, plaintiff below, against appellees.

On October 4, 1838, the board of land commissioners of Houston county issued to William C. Stanley original headright certificate No. 173, for one league and labor of land.

On January 1, 1839, W. C. Stanley conveyed the same with a general warranty to T. B. Huling, which conveyance was acknowledged for record on July 2, 1853, before John Hamilton, notary public of Jasper county, and recorded in the deed records of El Paso county some time between May 10, 1859, and November 12, 1860; the record does not disclose the exact date the same was filed and recorded, but it was otherwise satisfactorily shown that it was at some time between the dates mentioned. Appellees, defendants below, claim title to the land in controversy under this transfer. On December 22, 1856, half of a league and half of a labor of land, the same being the property in controversy, situated in El Paso county, was patented to the said Stanley, and is known as survey No. 50 in section No. 1. The land was located, surveyed, and patented by virtue of duplicate certificate No. 2145/2246, issued by the Commissioner of the General Land Office on October 30, 1851, in lieu of said original headright certificate No. 173. The issuance of this duplicate certificate was secured by Stanley and was based upon an affidavit of the loss of the original. This duplicate certificate was issued under the provisions of act of January 14, 1840, and an amendatory act of May 11, 1846, both of which will be found in Gammell's Laws of Texas, vol. 2, at pages 242 and 1532, respectively. By conveyance dated November 17, 1851, Stanley, acting by his authorized agent, Adolphus Stern, conveyed the duplicate certificate to one Johnson, under whom appellant claims by mesne conveyances.

After the parties had concluded the introduction of their testimony, plaintiff took a nonsuit, and the court peremptorily instructed the jury to find for the defendants upon their cross-action over against the plaintiff.

On March 30, 1877, Elizabeth Huling, as survivor of the community estate of Thos. B. Huling, conveyed the land to W. C. Phillips. By deed dated May 21, 1880, W. C. Phillips conveyed to J. H. Phillips, and thereafter J. H. Phillips, for a consideration of $4,000 paid, by deed dated February 4, 1884, reconveyed the land to W. C. Phillips. In a certain cause pending in the district court of Travis county, wherein W. C. Phillips was plaintiff and J. H. Phillips and others were defendants, partitioning certain land therein described, the land in controversy was partitioned and set aside to W. T. Phillips. It appears from the recitals in the partition decrees that the land in controversy was the community property of W. C. Phillips, the plaintiff, and his deceased wife, Penelope Phillips. That Penelope Phillips died intestate October 7, 1882, and that the six defendants at the date of her death were her only living children. The first decree was dated October 20, 1886, and decreed that W. C. Phillips owned an undivided one-half interest in the property and the defendants each a one-sixth undivided interest, and ordered partition and appointed commissioners. The other decree was dated December 20, 1886, approved report of commissioners, and partitioned and set aside in severalty to W. T. Phillips the land in controversy, and by mesne conveyances the same passed to the defendants. Plaintiff

objected to the introduction in evidence of these decrees rendered in the district court of Travis county, and by her first, eighth, and ninth assignments of error urges that she was a stranger to this partition suit, not bound by the recitals therein, and without such recitals there is no evidence to show: First, the marriage of W. C. Phillips and Penelope Phillips; second, the death of Penelope Phillips; third, the marriage of Fleecie H. Holmes and Walter H. Holmes, or the heirship of the defendants in the partition suit, viz., J. H. Phillips, Mary C. Phillips, Fleecie H. Holmes, Florida Phillips, Willie T. Phillips, and Walter D. Phillips; fourth, that the property was the community property of W. C. Phillips and Penelope Phillips; fifth, and assuming that such recitals were competent and sufficient to prove the facts above stated, the issues of fact thus made as to pedigree and the community status of the property involved were issues of fact which should have been submitted to the jury.

Aside from the recitals in above-mentioned decrees, it is insisted that there is no testimony which in any wise discloses that Penelope Phillips was the wife of W. C. Phillips; that she was dead; the marriage of Fleecie H. Holmes and Walter H. Holmes and heirship of the defendants in the partition suit; or that the property was the community property of W. C. Phillips.

[1] Were it material to establish the facts shown by those recitals in the decree, it may be that the objection urged by appellant would be well taken. We express no opinion as to the sufficiency of those recitals as proof of the facts therein stated. As stated above, the land was conveyed to W. C. Phillips by J. H. Phillips by deed dated in 1884. Excluding from consideration, as it is contended by appellant should be done, the recitals in the judgment, then there is no evidence of any community status or of title thereto in any one except in W. C. Phillips. Title being thus vested apparently absolutely in W. C. Phillips, in a partition suit to which he was a party, a judgment was rendered which divested all of his right, title, and interest in the land and vested the same in W. T. Phillips. The partition decree was certainly admissible in evidence for the purpose of showing the divestiture of the title of W. C. Phillips, and, appellant objecting to the sufficiency of the recitals, there is then no evidence of any community claim, and the judgment passed the W. C. Phillips title to W. T. Phillips.

With reference to the fifth ground of objection urged, as stated above, it is apparent that, by her own objections and contentions urged against the legal sufficiency of the recitals in the partition decree, the only evidence of pedigree and the community status of the property was eliminated and the effect of the contention is that the property was the separate property of W. C.

Phillips and his title by the partition decree was vested in W. T. Phillips. There was therefore no issue of pedigree or of the community status of the property in the case, and no issue of fact in regard thereto to be submitted to the jury.

[2, 3] Under the first assignment it is further contended that the recitals in the partition decree disclose that W. T. Phillips was then a minor, and it was incumbent therefore upon appellees to show that he was of age when he executed a conveyance of the land to Ella R. Burghardt on October 7, 1889. The final partition decree was dated December 20, 1886. We think it would be presumed that he was of age when he executed the conveyance, but, if such a presumption did not obtain, no one but W. T. Phillips could take any advantage of the fact that he was a minor at the date of the execution of the deed. The act of a minor is not void, but voidable only, and appellant could not avail herself of his minority, if he was, in fact, a minor when he executed the deed.

The second and third assignments of error do not point out the particular error upon part of the trial court complained of, nor do the subjoined propositions. They seem to be addressed to the proposition that if the cause is reversed it should be reversed and rendered instead of being reversed and remanded, and relate rather to the nature of the judgment to be here rendered than to any particular error on the part of the trial court. We doubt the sufficiency of the assignments to entitle them to any consideration, but have considered same and overrule them because we think the judgment should be affirmed.

[4] The fourth assignment of error complains of the action of the trial court in refusing to direct a verdict for the plaintiff for four separate and distinct reasons stated in the assignment; the reasons urged practically embracing every material point on which the appeal is based, and is submitted as a proposition. Considered as a proposition, it is complex and multifarious and cannot be considered. Railway Co. v. White, 120 S. W. 958, and other cases cited by this court in opinion rendered at this term upon motion for rehearing in case of Hemphill v. National Iron & Steel Company, 142 S. W. 845.

[5] Appellant by her fifth assignment of error complains that the court erred in admitting in evidence a certified copy of the transfer of original certificate No. 173 by William Stanley to Thos. B. Huling dated January 1, 1839, which was acknowledged before John Hamilton, a notary public of Jasper county, for the reasons set forth in first bill of exception. This assignment is first submitted as a proposition, and, referring to the bill of exception, we find 12 different objections urged to the admissibility of the instrument. As a proposition it is manifestly not entitled to consideration, and in passing upon this assignment we will con-

fine ourselves to the objections raised by the subjoined propositions.

Appellant filed an affidavit of forgery attacking the authenticity of this transfer. As above stated, the instrument was dated January 1, 1839, and purports to have been acknowledged before John Hamilton, a notary public of Jasper county, on July 2, 1853. The exact date it was filed for record in El Paso county is not disclosed, but by the testimony of the county clerk it is shown to have been recorded some time between May 10, 1859, and November 12, 1860; the testimony of the said clerk showing that the instrument was recorded in Book B of the deed records, and that a deed recorded in same book prior to that deed was recorded May 10, 1859, and that a deed recorded subsequent to the Stanley transfer in that book was recorded November 12, 1860.

[6] As affecting the question of the admissibility of this certified copy in evidence, the affidavit of forgery merely imposed upon appellees the burden of proving the instrument as at common law; it being an ancient instrument, recorded in El Paso county for over 50 years, and, its authenticity corroborated by the acknowledgment certificate, the instrument proved itself, and the certified copy was admissible in evidence. Holmes v. Coryell, 58 Tex. 680; Brown v. Simpson, 67 Tex. 231, 2 S. W. 644; Riviere v. Wilkins, 31 Tex. Civ. App. 454, 72 S. W. 608; McCelvey v. Cryer, 8 Tex. Civ. App. 437, 28 S. W. 691; Railway Co. v. Locke, 74 Tex. 396, 12 S. W. 80. With reference to the refusal of the court to consider certain testimony which appellant offered against the admissibility of the deed, such testimony related, not to the admissibility of the instrument in evidence, but rather to the weight to be given to the instrument in considering the issue of forgery. Williams v. Conyer, 49 Tex. 582. An examination of the bill discloses that the only testimony offered which might have rendered the instrument inadmissible in evidence was as to the authority of the notary public to act as such, and the only testimony upon that issue shows conclusively that the notary public was a duly appointed and qualified officer.

The propositions under this assignment of error are so general that it is difficult for us to ascertain the exact contention of appellant, and, if we have failed to grasp fully her contentions, it is due to the general and vague form of the propositions and failure to subjoin thereto a concise statement of the facts upon which she relies in support of the proposition. The statement which she refers to under these propositions is the statement following the submission of the assignment as a proposition, covering ten pages of her brief, six pages of statement under first assignment of error, one page under third assignment of error, and one page under fourth assignment of error. The various statements to which we are referred contain a mass of matter which could have no bearing upon a consideration of this assignment of error, and we are left without any specific information so far as the statement is concerned of what the facts are upon which appellant relies in support of the propositions under this fifth assignment of error.

The sixth assignment of error is disposed of and overruled by what has been said with reference to the admissibility of the certified copy of the transfer from Stanley to Huling.

[7] By her seventh assignment of error appellant challenges the correctness of the court's action in refusing to submit to the jury the determination of whether or not the transfer from Stanley to Huling of the original certificate was genuine or a forgery. The filing of an affidavit of forgery casts upon the party claiming under the deed the burden of proving its execution as at common law and, as we have seen, appellee fulfilled the burden, because the instrument was admissible as an ancient one. If the party impeaching the deed desires to do so, he may proceed to sustain by any lawful testimony the plea non est factum. While the burden of proof at all times rests upon the party claiming under the impeached instrument, yet the jury, in the absence of all proof sustaining the plea of forgery, could not find against the validity of the deed, and should be so instructed, where its genuineness has been prima facie established in some mode prescribed by common law. Cox v. Cock, 59 Tex. 524; Robertson v. Du Bose, 76 Tex. 1, 13 S. W. 300; Stooksbury v. Swan, 85 Tex. 563, 22 S. W. 963; Words and Phrases, vol. 6, p. 5549.

[8] The facts relied upon by appellant in support of her plea on non est factum, as set out specifically in the statement subjoined to this proposition, were as follows: The instrument and acknowledgment were both attacked by the affidavits of forgery; the instrument offered in evidence was a certified copy and not the original; the residence of Stanley is shown to have been in Angelina county and not in Houston county, as recited in the instrument; the name signed to the instrument is misspelled "Stanly"; the acknowledgment of the instrument was taken 13 years after its purported execution; Huling wrote a letter which was introduced in evidence as an archive of the land office asking if the patent was issued to Stanley upon the original certificate, which he must have then had in his possession if the transfer was genuine, and in this letter the name was likewise misspelled "Stanly," being the same mistake made in the signature to the purported transfer; that the facts indicated that the instrument was probably not executed until about the date of the loss of the original and advertisement of its loss, and issuance of the duplicate; that no steps appeared to have been taken by Huling or those claiming under him to locate the original certificate; the only evidence as to its cus-

tody was its record as shown by the certified copy; that Thos. B. Huling was shown to have been a fugitive from justice, and his reputation as a forger was bad; that John Hamilton, the notary public before whom the instrument purports to have been acknowledged, had not qualified at the date of the purported instrument; that the reputation of Stanley was good, and that the duplicate certificate was located under a contract between Hancock, Crosby, and M. T. Johnson.

The foregoing are the specific facts referred to by appellant in the statement as raising the issue of forgery. She further refers the court in this statement to various other preceding voluminous statements in the brief which contain a mass of matter which could have no possible bearing upon the issue of forgery, and, in determining whether or not the issue of forgery was raised by the evidence, we will confine ourselves to that specifically stated by her above quoted. Referring now to these facts specifically called to our attention, we will discuss the same in the order stated. The affidavit of forgery was not evidence thereof. Sydnor v. Texas, etc., 42 Tex. Civ. App. 138, 94 S. W. 451; Ehrenberg v. Baker, 54 S. W. 437. The fact that the instrument offered and admitted in evidence by the court was a certified copy certainly does not tend to prove that the original was a forgery. No deduction of forgery can be drawn from the fact that a certified copy, which is expressly authorized by law to be admitted, was admitted instead of the original. In regard to the contention that the residence of Stanley is shown to have been in Angelina county, and not in Houston county, as set forth in the instrument which is attacked as a forgery, we are referred to no testimony which shows that Stanley was not a resident of Houston county at the date of the execution of the instrument. The statement of facts in this case contains 200 pages of typewritten matter, and we will not search this voluminous record to ascertain whether or not the residence of Stanley is shown to have been in Angelina county in 1839. The only testimony which we have observed which shows his residence is that of the witness Davis who testifies that he knew Mr. Stanley in Angelina county in 1858 and 1859. The fact that he resided in Angelina county in 1858 and 1859 does not even cast a suspicion upon the recital in the instrument executed in 1839 that he then lived in Houston county. The fact that the name signed to the purported transfer being spelled "Stanly" instead of "Stanley" might be a circumstance bearing upon the issue of forgery if there was any direct testimony affirmatively showing the correct spelling to be "Stanley." Our attention is called to no such testimony showing the correct spelling. It is true it is spelled "Stanley" in the duplicate certificate, in the transfer to Huling, and the certificate of acknowledgment thereto, also in the power of attorney to Stern and in the deed from

Stern as agent to Johnson; but this does not constitute direct and affirmative proof that it was the correct spelling, and, if it was the correct spelling, we deduce it by inference only. This being true, the fundamental rule in regard to circumstantial evidence that an inference of fact cannot be founded on an inference is applicable.

In 3 Encyc. of Evidence, 70, it is stated, "No inference being reliable which is drawn from premises which are themselves uncertain, whenever it is sought to establish a proposition by circumstantial evidence, the circumstances from which the inferences must be drawn must be themselves established by direct evidence, as if they were the very facts in issue, and must not be left to conjecture," and in Starkie on Evidence, 17, it is said: "It is obvious that the means of indirect proof must usually be supplied by direct proof, for no inference can be drawn from any collateral facts until these facts have themselves been first satisfactorily established, either by actual observation or information derived from others who have derived their knowledge from such observation." See, also, 16 Cyc. 1051, and Wroth v. Norton, 33 Tex. 192.

In order, therefore, to predicate a finding of forgery upon the discrepancy in the spelling of the signature, the jury must have first inferred that the correct spelling was "Stanley," and then infer the fact of forgery from the apparent discrepancy in the spelling of the signature to the Stanley-Huling transfer. Neither do we think the slightest inference can be drawn from the fact that the instrument was not acknowledged until 13 years after its purported execution. The certificate transferred by the conveyance was personal property, and, until it had been surveyed and located, there was no necessity that it should be acknowledged and recorded. It appears to have been surveyed in January, 1854, patented in December, 1856, and the acknowledgment was dated July 2, 1853. Under this state of facts, no deduction of forgery could properly be drawn from the fact that there was a delay of 13 years after execution before acknowledgment.

With reference to the letter written by Huling to the land office inquiring about the issuance of the patent upon the original certificate, it appears from the allegations in plaintiff's motion for a new trial in paragraph 27 that this letter was written by Thos. B. Huling, Jr., and not by Thos. B. Huling, Sr., the grantee of Stanley. It could therefore have no bearing whatever on the question of whether or not Huling, Sr., forged the transfer, and was not admissible in evidence for any purpose. Aside from this, we find upon referring to the letter in the statement of facts the name was there spelled "Stanley," and not "Stanly," as stated by appellant.

With reference to the contention that the facts indicated that the transfer was proba-

bly not executed until about the date of the loss of the original certificate, the advertisement of loss and issuance of the duplicate, we are referred to no facts whatever sustaining this statement, and we cannot search the entire record to ascertain if this contention is well founded; neither are we referred to any evidence sustaining the statement that Huling took no steps to locate the original certificate. Even if the record be silent upon this subject, it could not be presumed without any affirmative testimony that no such steps had been taken; neither do any steps appear to have been taken by Stanley to locate the certificate until 1853. The custody of the original instrument cannot be possibly raised in a case where a certified copy is offered, under the statutes, in lieu of the original. There is not a scintilla of evidence supporting the statement that Thos. B. Huling was shown to have been a fugitive from justice and his reputation bad as a forger. The undisputed evidence is that Thos. B. Huling, Sr., the grantee, died in 1865, whereas the testimony of the witness Davis, upon which this contention is predicated, shows that his testimony referred to a man living at a date long subsequent to the date of the death of Huling, Sr., and, further, the twenty-seventh paragraph of plaintiff's motion for a new trial expressly states that the testimony shows it was Huling, Jr., who was referred to in Davis' testimony as a fugitive from justice and forger of land titles.

The contention that the notary public, Hamilton, was not a notary public at the date of the purported acknowledgment is wholly unsupported and directly contradicted by the undisputed testimony. That the reputation of Stanley was good does not even tend to prove that the instrument relied upon was a forgery, and the fact that the duplicate certificate was located under a contract between Hancock, Crosby, and Johnson has no bearing upon the issue; if it did bear upon the issue, the doctrine of res inter alios acta would apply. We have here an instrument purporting to have been executed in 1839, acknowledged in 1853, and recorded since the year 1860, attacked as a forgery at a time when death has necessarily closed the lips of every witness who could possibly give any direct testimony in support of its authenticity, and the only possible circumstances pointed out to us which could even remotely impeach its authenticity is the discrepancy in spelling the name "Stanley," the alleged variance between the recited and true residence of the grantor, and the fact that the grantor's reputation was shown to be good. For the reason above indicated, we think no deduction of forgery could legally be drawn from these facts. At best, they suggest only a surmise or suspicion from which it might be conjectured that the Huling deed was forged. In Paxton v. Boyce, 1 Tex. 317, it is said: "That, when fraud is attempted to be proven by circumstantial evidence, the cir-

cumstances should be strong and pregnant, from which no other reasonable conclusion should be drawn." A finding of fact upon conjecture is not authorized. In 14 Encyc. of Evidence, p. 76, it is said: "Mere surmise or conjecture is never regarded as proof of a fact, and a jury will not be allowed to base a verdict thereon." In Smith v. Lawrence, 98 Me. 92, 56 Atl. 455, it is said: "A case is not proved where the evidence gives ground for surmise only; the evidence adduced must be inconsistent with the negative of the proposition." In Bank v. Stewart, 114 U. S. 224, 5 Sup. Ct. 845, 29 L. Ed. 101, it is said: "The law requires an open and visible connection between the principal and evidential facts and deductions from them, and does not permit a decision to be made on remote inferences." See, also, Wells v. Fairbank, 5 Tex. 582; Davie v. Terrill, 63 Tex. 105; Rogers v. Tompkins, 87 S. W. 379; Railway Co. v. Greenwood, 40 Tex. Civ. App. 252, 89 S. W. 810; Fulgham v. Railway Co., 181 Fed. 91, 104 C. C. A. 151; Railway Co. v. Faber, 77 Tex. 154, 8 S. W. 64; 17 Cyc. 754. We therefore hold that the trial court committed no error in refusing to submit the issue of forgery.

By her tenth assignment of error appellant urges that the court erred in admitting in evidence certified copies of certain proceedings had in the district court of Lampasas county, which proceedings were had in 1872, and substituted the papers in the administration of the community estate of Thos. B. Huling, which proceedings showed that Elizabeth Huling was the wife of Thos. B. Huling, the death of Thos. B. Huling, and her appointment and qualification as survivor of the community estate.

[9] By the eleventh assignment she complains of the admission in evidence of the original deed from Elizabeth Huling as survivor of the community estate of Thos. B. Huling to W. C. Phillips, dated March 30, 1877, conveying the premises in controversy, because the recitals in the deed as to administration, marriage, death of Thos. B. Huling, and community status of the property, were not evidence of those facts, and without them there was no competent evidence thereof. The marriage of Thos. B. Huling and Elizabeth Huling and the death of Thos. B. Huling on December 31, 1865, however, is shown by competent testimony aside from the recitals in the deed, and, in view of the age of the deed and the destruction of the Lampasas county records by fire, the court did not err in admitting this instrument in evidence. As a matter of law, the property was presumed to be community and under the circumstances stated the authority of the survivor to sell would be presumed. Ardoin v. Cobb, 136 S. W. 271; Veramendi v. Hutchins, 48 Tex. 552; Manchaca v. Field, 62 Tex. 135; Wolf v. Gibbons, 69 S. W. 238.

[10] The substitute proceedings complained of in the tenth assignment were admitted as a

predicate to the admission of the deed from Elizabeth Huling to Phillips, and, under the view indicated above in regard to this deed, it is wholly immaterial whether the substitute proceedings were properly admitted or not. The error, if any, in admitting same, was harmless.

[11] On the eleventh day after the service of the notice upon defendant by the plaintiff requiring the filing of an abstract, the cause was called for trial and proceeded to trial without objection upon part of plaintiff. The defendant had 20 days after the service of the notice within which to file the abstract, and, if.the plaintiff desired to insist upon her right to have the abstract filed, it was her duty to request a postponement or delay in the trial, and, having failed to do so, it should be held that she waived her right to have the abstract of title filed. The case of Barth v. Green, 78 Tex. 678, 15 S. W. 112, is directly in point upon this question and is adverse to the appellant. The twelfth assignment is therefore overruled.

[12] By the thirteenth, fourteenth, and fifteenth assignments of error appellant complains that the court erred in excluding certified copies from the land office of an affidavit of William C. Stanley dated October 14, 1851, stating original certificate 173 had been lost, that he had never sold, alienated, or transferred the same in any manner, and that he was the owner thereof; a copy of the advertisement of such loss, in a newspaper, and a certificate of the publisher of said newspaper of such advertisement; upon which affidavit, advertisement, and certificate the duplicate certificate was presumably issued. These assignments are submitted as propositions. They cannot be regarded properly as propositions because they do not show the reason why the court erred in excluding same; neither the statements subjoined to these assignments, nor the voluminous written argument filed herein by appellant show any reason why the court erred in excluding the same, and we are left to conjecture and surmise wholly to determine upon what theory appellant contends the court erred. We surmise that the contention is that they were properly admissible in evidence in support of the plea of non est factum urged against the Stanley-Huling transfer, but this is a surmise of ours only and we cannot indulge therein.

[13] Under rule 30 (67 S. W. xvi), an assignment of error can be submitted as a proposition only when it discloses the point. The propositions, statements, and argument are designed to show the reason why a particular action of the trial court was erroneous; the proposition being particularly intended to present the point urged. For the reasons indicated, the thirteenth, fourteenth, and fifteenth assignments of error are not considered. Houston Oil Co. v. Kimball, 114 S. W. 662; De Hoyas v. Railway Co., 52 Tex. Civ. App. 543, 115 S. W.

75; Boone v. Herald News Co., 27 Tex. Civ. App. 546, 66 S. W. 313; Chapman v. Brite, 4 Tex. Civ. App. 506, 23 S. W. 514; Railway Co. v. Branch, 56 S. W. 542; Hayward Lumber Co. v. Cox, 104 S. W. 403; Land v. Roby, 56 Tex. Civ. App. 333, 120 S. W. 1057; Wilkins v. Clawson, 50 Tex. Civ. App. 82, 110 S. W. 103.

In passing, however, we will say, if the affidavit, advertisement and publisher's certificate were offered in support of the plea of non est factum of the Stanley-Huling deed, the court properly excluded the same. The advertisement and certificate in no wise tended to prove the plea of forgery. The affidavit of Stanley, however, that he was still the owner of the original certificate and had never sold, alienated, or transferred the same, would impeach the validity of the Huling transfer, if properly admissible. As a general rule, ex parte affidavits are not admissible in evidence. The law governing the issuance of duplicate certificates required the owner to make this affidavit as a prerequisite to the issuance of the duplicate, and, if the validity and regularity of issuance of the duplicate certificate was an issue, then the affidavit, advertisement, and certificate would properly be admissible in evidence to show that the statutory prerequisites had been complied with. The affidavit, however, would not be evidence against a third party of the truth of the facts therein stated. It is true the land claimed by appellees in this suit was patented by virtue of the duplicate certificate, but an ex parte affidavit made by Stanley would not be admissible in evidence to prove forgery of a deed purporting to have been theretofore executed by him. The question is analogous to certain evidence required in controversies over the title to free school land. The law regulating the sale of free school land requires the purchasers within a certain time after the land is awarded to him to file an affidavit in the land office stating that he has in fact settled upon the land, and within three years he is required to file an affidavit showing that he has resided upon the land and made certain improvements thereon. In an action by such purchaser to establish his title to the land, these affidavits are admissible in evidence for the purpose of showing that the statutory provision requiring their filing has been complied with, but they are not to be received as evidence of the truth of the statements therein contained. So in the instant case, if it were material to show the fact that the affidavit was filed and the necessary publication made, the affidavit and certificate and advertisement would be admissible to show that the statutory requirements had been complied with, but not as evidence of the truth of the statements contained in the affidavit that Stanley was then the owner of the original certificate and that he had not sold or transferred the same.

[14] The court did not err in excluding the memorandum upon the margin of the letter written by Thos. B. Huling to G. W. Smythe, land commissioner, dated March 3, 1850, and the sixteenth assignment is therefore overruled. Gaither v. Hanrick, 69 Tex. 92, 6 S. W. 619; Franklin v. Tiernan, 62 Tex. 101. This is especially true in view of the fact that, by the admission in plaintiff's motion for new trial, the writer of this letter was the son and not the original Thos. B. Huling.

In support of the seventeenth assignment of error appellant contends (a) that the evidence raised the issue as to whether or not Josiah F. Crosby and others under whom she claimed were innocent purchasers for value, without notice of the adverse claim of the parties under whom the appellees claim, and that this issue should have been submitted to the jury; (b) that the evidence showed that appellees and those under whom they claimed were estopped from asserting title as against the appellant, and that this issue should have been submitted to the jury; (c) that the evidence raised the issue of whether or not appellant was the equitable owner of the premises, which issue should have been submitted to the jury; (d) that the evidence showed that appellees' claim to the property was equitable in its character, and their right to assert the same was a stale demand and had been lost by reason of delay in asserting it. Other questions presented under this assignment have been passed upon in the discussion of preceding assignments.

As will be seen from the facts as heretofore stated appellees' rights are predicated upon the transfer of the original certificate by Stanley to Huling executed in 1839, and the rights of the appellant upon the duplicate certificate transferred by Stanley to Johnson executed in 1851, and the subsequent location and survey of the land under a contract between Crosby, Johnson, and Hancock, and the issuance of the patent in 1856.

[15] The certificate under which appellees' claim transferred to Huling, as above stated, was personal property, and a purchaser of personal property can acquire no better title than his vendor owns, and equity will not afford protection to an otherwise innocent purchaser except in a case where some element of estoppel exists and would operate against the owner. Dodge v. Litter, 73 Tex. 319, 11 S. W. 331; N. Y. L. Co. v. Hyland, 8 Tex. Civ. App. 601, 28 S. W. 210.

[16] Stanley having conveyed the certificate to Huling in 1839, no title, therefore, passed to Johnson by the subsequent transfer to him, and no facts are called to our attention upon which an estoppel could be predicated against Huling and those claiming under him.

[17] The transfer from Stanley to Huling contained a general warranty, and, upon the subsequent location of the land and issuance of patent to Stanley, both the legal and equitable title became vested in Huling. Barroun v. Culmell, 90 Tex. 93, 37 S. W. 313; Miller v. Gist, 91 Tex. 339, 43 S. W. 263; Dupree v. Frank, 39 S. W. 994. The issuance of the duplicate certificate by the land commissioner was not void, but was voidable as against Huling, and while the rights of the true owner, Huling, could not be divested by the issuance of the duplicate to Stanley, and while he could, if he saw fit, have proceeded to locate the original certificate, yet when the duplicate was located, and the land patented, Huling and his vendees, if they saw fit, could assert their right to and claim the land so located and patented. Seibert v. Richardson, 86 Tex. 295, 24 S. W. 261; Beatty v. Masterson, 77 Tex. 171, 13 S. W. 1014.

[18] The doctrine of stale demand has no application here, where both the legal and equitable title appears to have been vested in those claiming under the transfer of the certificate by Stanley in 1839.

[19] The eighteenth assignment of error is as follows: "The trial court erred by failing and refusing to give to the jury proper instructions presenting the issues called to the attention of the court in the third special instruction requested by the plaintiff and refused by the court, as more fully shown by said instruction and by plaintiff's eighth bill of exceptions which was duly approved and filed in said cause on the 8th day of March, 1911, and made a part of the record therein." The assignment is submitted as a proposition, but cannot be so considered because it does not disclose the point relied upon. We have, however, examined the bill of exceptions and special instruction referred to in the assignment, and it appears from the instruction that it is simply a request that the court submit to the jury the various issues of forgery, etc. It is therefore clearly apparent that this is an attempt under this assignment to raise all material issues in the appeal, without separate propositions submitted in accordance with the rules, but in any event all questions raised by the assignment have been passed upon in the consideration of the preceding assignment.

The nineteenth assignment of error is passed upon and disposed of by what has been said in the discussion of the tenth and eleventh assignments of error.

The foregoing is the opinion and judgment of the majority of the court. Justice McKENZIE dissents from some of the views expressed above, and will later file a dissenting opinion.

Affirmed.

McKENZIE, J. (dissenting). I do not agree with my Associates in affirming this case.

This suit was instituted by appellant filing her action in trespass to try title to recover the land in controversy. Appellees answered

by plea of not guilty and for affirmative relief filed a cross-action of trespass to try title for the recovery of the land. To the cross-action appellant answered by plea of not guilty and specially pleaded that the transfer from "W. C. Stanly to Thos. B. Huling" and the certificate of acknowledgment thereto were forgeries. The case was tried before a jury. After the parties had introduced all their testimony, the appellant, with leave of the court, took a nonsuit of the original action of trespass to try title. Thereupon, by motion of appellees, the court peremptorily instructed the jury to return verdict for them, which was accordingly done, and upon which verdict judgment was rendered.

The appellees, to show title, introduced in evidence a certified copy of the deed records of a purported transfer of the original certificate from W. C. Stanley to Thos. B. Huling, which transfer is dated January 1, 1839, and appears to have been acknowledged before John Hamilton, notary public, Jasper county, Tex., on July 2, 1853, and recorded in Book B, page 37, of the deed records of El Paso county. The date of the filing and of the recording of said instrument does not appear from the certified copy or from the record of said instrument. On the trial, however, it was proved that an instrument was recorded in Book B, May 11, 1859, on pages 17 and 18, and that another instrument was recorded in the same book November 12, 1860, on pages 149 and 150. This proof would indicate that the instrument was recorded in said book some time between the two dates mentioned. The certified copy of the transfer and acknowledgment, as introduced in evidence, is as follows:

"The Republic of Texas, County Jasper.

"Know all men by these presents, that I, William C. Stanley of the county of Houston and republic aforesaid in and for the consideration of six hundred dollars to me in hand paid by Thomas B. Huling of the county of Jasper and republic aforesaid, the receipt whereof is hereby acknowledged, do this day grant, bargain, sell, alien, convey and confirm unto the said T. B. Huling, his heirs and assigns all my right, title, and interest and estate of me and my heirs and assigns in and to all my headright certificate of one league and labor of land granted to me by the board of land commissioners in and for the county of Houston and No. 173, on the 4th of October, 1838, to be located on any vacant land of this republic.

"To have and to hold the aforesaid certificate of one league and one labor of land to the said Thomas B. Huling, his heirs and assigns, to his and their use and behoof forever from me and my heirs and assigns forever, and I do hereby warrant and defend the aforesaid certificate to the said purchaser his heirs and assigns from me and, my heirs and assigns forever and each and every person or persons lawfully claiming the same in any way and I do hereby warrant the same to be free and clear of all encumbrances and as such I sell the same to said purchaser.

"Given under my hand and seal this first January A. D. eighteen hundred and thirty-nine. W. C. Stanly [Seal.]

"Test: L. S. Waltof.

"The State of Texas, County Jasper.

"Personally appeared before me John Hamilton, notary public in ——— for the county and state aforesaid W. C. Stanley to me well known and acknowledged the signed, sealed & delivered the within deed for the purposes & considerations therein mentioned to the end.

"Given under my hand and seal of office this 2d day of July, A. D. 1853.

"John Hamilton,
"N. P. Jasper county, Texas."

Upon the trial of the case affidavits were made and duly filed by appellant attacking this transfer and the acknowledgment thereto as forgeries. By the filing of the affidavits, the burden of proving the genuineness of the said transfer and the acknowledgment thereto and of the execution of each was placed upon appellees, which proof would have to be made as at common law. Both parties are claiming title to the land from William C. Stanley as the common source. I think it is the established law that, when the appellant took her nonsuit to enable the appellees to recover as against her, the burden of proof was then shifted to them; and also to enable the appellees to recover as against the appellant they are required to do so by virtue of the strength of their own title, and not by any weakness of the appellant's title. Before the appellees offered in evidence the "Stanly-Huling" transfer, the appellant had proved, in making out her case: First. That the land in controversy had been patented by the state of Texas to William C. Stanley by virtue of duplicate certificate No. 2145/2246 issued by the Commissioner of the General Land Office on October 30, 1851, in lieu of headright certificate No. 173 issued by the board of land commissioners of Houston county on the 4th day of October, 1838; this patent was filed for record in El Paso county March 6, 1860, and recorded in Book B, pages 77 and 78, on March 28, 1860. Second. On October 14, 1851, William C. Stanley of the county of Angelina, executed and delivered to Adolphus Stern a general power of attorney, empowering the said Stern to receive from the Commissioner of the General Land Office a duplicate certificate for the league and labor of land, which he was entitled to by virtue of the original certificate, and to receive patent therefor; and also to sell, alien, and convey the certificate to any person or persons, with power of substitution, and confirming all acts which said attorney may do in the premises. This instrument

was witnessed by two persons subscribing themselves as such, and was duly acknowledged before Joseph Herrington, chief justice of Angelina county, Tex., and recorded in Book B, page 80, of the deed records of El Paso county, Tex. Third. On November 17, 1851, Adolphus Stern, as attorney in fact for William C. Stanley, by virtue of the above power of attorney, conveyed to M. T. Johnson, reciting a consideration of $1,000 paid, "the headright certificate of the said William C. Stanley for one league and labor of land issued on the 30th day of October, 1851, by Geo. W. Smythe, Commissioner of the General Land Office, of the state, No. 2145/2246, being a duplicate issued in lieu of No. 173 issued by the board of land commissioners of Houston county to the said Stanley on the 4th day of October, A. D. 1838." This conveyance was made with covenants of warranty, duly acknowledged by said Stern as attorney in fact for William C. Stanley before Francis F. Duffel, notary public, Travis county. This instrument appears of record in Book B, page 83, of the deed records of El Paso county, Tex. The appellant by proper proof connected herself with the foregoing conveyances by regular chain of title. Fourth. It was further proved that the land in controversy was located, surveyed, and patented in the name of William C. Stanley by virtue of the duplicate certificate as issued October 30, 1851. Fifth. That M. T. Johnson entered into a contract, after the said duplicate certificate was conveyed to him, with John Hancock and Josiah F. Crosby for the locating, surveying, and patenting of the land in controversy by virtue of said duplicate certificate, and that said land was in fact located, surveyed, and patented through the efforts and at the cost and expense and at the instigation of the said last-named parties. Sixth. That all of the land office fees incurred in obtaining the patent were paid by the said M. T. Johnson, and that the land commissioner, after the issuance of said patent, delivered same to him and that the original patent was found to be in the possession of the said Josiah F. Crosby at the time of his death. Seventh. It was further shown by the evidence that said Crosby and his predecessors in title claimed ownership of the duplicate certificate and the land located thereunder since November 17, 1851, the date when the duplicate certificate was transferred to the said M. T. Johnson, and that they paid taxes thereon and dealt with the land as their own.

From the foregoing, I think, in the absence of any testimony to the contrary, that the Commissioner of the General Land Office in issuing the duplicate certificate recognized, and it would be presumed, that William C. Stanley, to whom the original certificate No. 173 was issued, was at said time the owner thereof. The act of January 14, 1840 (Gammell's Laws of Texas, vol. 2, p. 242), provides as follows:

"Sec. 2. That any person having lost any of the above mentioned certificates * * * shall previous to applying for a duplicate of the same, make or cause publication to be made for sixty days, in at least one newspaper published at the nearest place where the individual resides, which publication shall describe as correctly as possible the paper lost. * * *

"Sec. 3. That when any person shall apply for a duplicate of any claim against the government, he shall be required to prove that he has fully complied with the preceding section of this act, and shall take and subscribe an oath to the following effect: That he was the just owner of the claim, that he had never sold, alienated or transferred the same in any manner, that it has been lost, and that since lost, he has neither known or heard of the same.

"Sec. 4. That should any land warrant, discharge or certificate for a head-right of land, for which a duplicate had been issued, be ever after presented to the Commissioner of the General Land Office * * * and should it appear that such land warrant, discharge or certificate for a head-right of land was not lost, but was sold or in any way alienated by the person who obtained the duplicate thereof it shall be the duty of the * * * Commissioner of the General Land Office to give information of the fact to one of the district attorneys who shall prosecute the aforesaid person for perjury; and should he be convicted, in addition to the statutory punishment for that crime, he shall be incapable of ever after holding within, or enjoying any of the privileges of a citizen of this republic."

The amendatory act of May 11, 1846 (Gammell's Laws, vol. 2, p. 1532) provides as follows, and should be read in connection with the foregoing act: "That any person who may have lost any land warrant, discharge, certificate for a headright claim emanating from the government, or any special grant from the Congress of the Republic of Texas, and entitling the holder to a bounty of land, shall be entitled to demand and receive a duplicate of the same, so lost, by complying with the provisions prescribed in the act above recited."

It is also to be presumed, for the purposes of this suit, that the Commissioner of the General Land Office in issuing the duplicate certificate complied with the requirements of the law, and that before the issuance of said duplicate certificate the said William C. Stanley had in fact made advertisement in some newspaper, as required by law, of the loss of the original certificate No. 173, had made proof satisfactory to the land commissioner and had also made and filed an affidavit with the said commissioner that he was the owner of the original certificate and that he had not at said time sold, alienated, or transferred the same in any manner; that it

had been lost, and that since lost he has neither known or heard of the same.

Appellant's fifth assignment of error, with the several propositions and statements under each proposition, raises the issue as to the admissibility in evidence of the said "Stanly-Huling" transfer, and from the evidence introduced I think it is conclusively proved as a fact in this case that William C. Stanley is the party to whom the original certificate No. 173 was issued and to whom the duplicate certificate was issued and to whom the original patent was issued. From an examination of the Stanly-Huling transfer it will be seen that it is signed "W. C. Stanly"; the certificate of acknowledgment, which is the only proof we have as to the execution of the instrument, states that "W. C. Stanley" acknowledged same. This has been held to be insufficient to authorize its registration. Stephens v. Motl, 81 Tex. 115, 16 S. W. 731; McKinzie v. Stafford, 8 Tex. Civ. App. 121, 27 S. W. 790. In the case of Stephens v. Motl, supra, it was held that a deed signed by Jonas Butler, when the certificate recited "appeared James Butler, Esquire, to me personally known, and acknowledged the foregoing conveyance to be his act and deed," was held to be insufficient to authorize its registration. In McKinzie v. Stafford, supra, it was held that an acknowledgment by "F. M. McKezie" of a deed signed by "F. M. McKinzie" is insufficient to authorize its registration.

From the foregoing decisions it would seem that a presumption should not be indulged in which is contrary to the facts as shown in the instrument. Unless, therefore, we indulge in presumptions, we certainly cannot say that "W. C. Stanly" is one and the same party as "W. C. Stanley," nor should we presume that the party signing the instrument as "W. C. Stanly" meant to sign it as "W. C. Stanley," nor do I think it would be reasonable to presume that the notary taking the acknowledgment knew better the name of the party who signed the instrument than did that party himself, and to presume that the clerk in making the record of the instrument made a mistake in copying the name of the grantor would be the making of a mere guess. I think, under the law, that the presumption would have to be indulged in that the clerk actually made a correct copy of the original instrument as presented to him for registration, and that the grantor in said instrument was in fact named "W. C. Stanly" and not "William C. Stanley," the owner of the original certificate No. 173. I think it is but a reasonable presumption that the party signing the instrument knew how to write his name correctly, and that he did do so. If I am correct in holding as a fact that William C. Stanley is the name of the party to whom the original certificate was issued, the contention as made by the majority of the court that we are left to deal in inferences as to the correct name

is eliminated, and the necessity of establishing a proposition by circumstantial evidence, the circumstances from which the inferences must be drawn, has been obviated and we are no longer left to conjecture. It follows, then, if I have drawn the proper deduction as to the holding of the above authorities, that the "Stanly-Huling" transfer was not entitled, under the law, to registration, and without such registration the certified copy would be unauthorized and inadmissible in evidence in this case, and the title of appellees would fail by virtue of its own weakness. It would also follow that the Stanly-Huling transfer would be inadmissible in this case until it was shown as a fact, or that proper evidence had been introduced which would be sufficient for the jury to find as a fact that "W. C. Stanly" was one and the same party as "William C. Stanley." Such evidence was not introduced. The instrument on its face, in the light of the affidavits of forgery filed, shows that it is not free from suspicion, and in the light of the testimony which was before the court and jury, when the "Stanly-Huling" transfer was offered, it was inadmissible. The further fact that the "Stanly-Huling" transfer purports to have been acknowledged on July 2, 1853, and nearly 20 months after the said William C. Stanley had executed a general power of attorney dated October 14, 1851, to Adolphus Stern, and in view of the further fact that the duplicate certificate was issued October 30, 1851, which required a compliance with the laws by the Commissioner of the General Land Office, also casts suspicion upon said instrument sufficient, I think, in the absence of other proof on the part of appellees, to hold said instrument inadmissible.

The record does not disclose that there was an affidavit of the loss of the original "Stanly-Huling" transfer filed three days before the commencement of the trial, or that notice was given the opposite party of such filing, as required by article 2312 of the Revised Statutes of 1895. This should have been done as a predicate for the introduction of the certified copy. Gann et al. v. Roberts et al., 32 Tex. Civ. App. 561, 74 S. W. 950. From the assignment of error and proposition thereunder, it is not quite clear that this question is raised.

The seventh assignment of error and propositions thereunder raise the question as·to the sufficiency of the evidence to have required the trial court to have submitted the issues in the case to the jury, and, since the trial court peremptorily instructed the jury to return verdict for appellees, the inquiry necessarily is one as to whether there are such issues in the case. As to whether there is any evidence in a case, or what its legal effect may be, is to be determined by the trial court. If there is no evidence to support an issue, it is the duty of the court to so instruct the jury, but, if there is any evi-

dence to support the issue, the issue must be submitted by proper charge to the jury who are the exclusive judges of its weight and sufficiency, however slight it may be, and though it is circumstantial. It is only when the testimony is such that but one conclusion can be deduced from it by ordinary minds that the question at issue becomes one of law and the court is authorized to peremptorily instruct a verdict upon it. Passmore, Instructions to Juries, § 165, p. 111. Also, there is an entire absence of testimony which in any manner indicated that Thos. B. Huling was ever in possession of the original certificate, unless it be shown by the certified copy of the "Stanly-Huling" transfer. There is also an entire absence of testimony which in any manner shows or tends to show that said Huling did anything to obtain the duplicate certificate, or to locate, survey, or patent the land under the original certificate, or under the duplicate certificate. There is an entire absence of testimony in the record which shows any assertion of title or claim on the part of said Huling during his lifetime to the original certificate, or to the duplicate certificate, or to the land in controversy, further than is shown by the certified copy of the "Stanly-Huling" transfer.

If I should be wrong as to the admissibility in evidence of the "Stanly-Huling" transfer as is contended by my Associates, then, under the evidence, said transfer, by reason of the fact that it is an ancient document, at most, should be admitted in evidence only as an earnest of the issue, and when so admitted, it being attacked by affidavits of forgery, the question of its genuineness is made an issue by the testimony, and such question, under proper instructions, should be submitted to the jury for its determination. Beaumont Pasture Co. v. Preston. & Smith, 65 Tex. 448. The circumstances in this case, which are evidenced by authentic instruments of writing which tend to contradict and impeach the genuineness of the "Stanly-Huling" transfer, raise, in my mind, such an issue as should have been submitted to the jury. In the regular course of events, the question might well be asked, Why would Huling remain acquiescent, inactive, and silent from the 1st day of January, 1839, the date of the "Stanly-Huling" transfer, until his death, without making it known that he had an interest in the certificates or in the property located thereunder? It appears that "W. C. Stanly" signed the instrument, and, under any construction which the different minds see fit to place upon same, whether the name "W. C. Stanly" was an inadvertent mistake of the officer recording same, or otherwise, still the fact itself remains unexplained by any evidence in this case, and makes an issue for the jury. And, too, the further fact that the transfer was not acknowledged for nearly 14 years after its date, and for

nearly 20 months after the issuance of the duplicate certificate, would raise, I think, an issue as to when it was really executed. Both parties are claiming under the duplicate certificate, and, necessarily, the things done to procure the duplicate would be binding upon each in the absence of testimony showing excuse or explanation therefore. One should not be allowed to enjoy the fruits of a transaction without being bound by the acts of the parties or of the proceedings which brought about the success of said transactions.

Another issue which is clearly raised by the evidence is the one of an innocent purchaser for value and without notice on the part of M. T. Johnson of the duplicate certificate. It is true the original certificate, and the duplicate certificate, for that matter, is personal property, and the title may pass by making manual delivery with intention of parties that title shall pass, but in the instant case title to the original certificate No. 173 is sought to be proved by an instrument in writing, the only evidence of which is shown by the certified copy introduced in evidence. Hence the only notice which of necessity is purely constructive, but in law is as binding as if it were actual notice, is the record of the instrument itself. It clearly appears from the evidence in the case that the power of attorney from Stanley to Stern is recorded in Book B, page 80, of the deed records in El Paso county; that the transfer of the duplicate certificate by virtue of said power of attorney is recorded in Book B, page 83; and that the original patent, which issued by virtue of the duplicate certificate, is of record in Book B, pages 77 and 78. The evidence does not show that the "Stanly-Huling" transfer was, as a matter of fact, filed before the several instruments enumerated. It could have been filed at a later date and yet recorded first. At least an issue is presented, unexplained by evidence which would remove doubt. From the evidence in the case, it is undisputed that the appellees' right to a recovery depends upon the "Stanly-Huling" conveyance of the original certificate No. 173, as made January 1, 1839, and which is purported to have been acknowledged July 2, 1853. The land in controversy was located, surveyed, and patented by virtue of the duplicate certificate No. 2145/2246, all of which was brought about by the appellant and her predecessors in title. It is not shown that Huling, or any one claiming under him, participated in obtaining the duplicate certificate or of locating, surveying, or obtaining the patent. It appears that the interest of the parties was adverse in that appellant's predecessors in title claimed the ownership of the duplicate certificate and the land located and patented thereunder. It has been held that, in so far as Huling's rights are affected by the unauthorized location of land under the certificate of which

145 S.W.—46

he is the owner, he could ratify or adopt the unauthorized location of said land and of the issuance of the patent therefor; or he could make a relocation of the land at such time and at such place as he so desired by virtue of his original certificate. This being true, it devolved upon Huling to make some overt act showing that he either ratified or adopted the acts of the adverse claimants, and testimony was required to show this. The only evidence we have before us is the copy of the "Stanly-Huling" transfer. I am of the opinion that it, standing alone, is insufficient, and the issue of stale demand should have been submitted to the jury. I do not think the case of Barroum v. Culmel, 90 Tex. 93, 37 S. W. 313, and other cases as cited by my Associates in the majority opinion, are in conflict with the view herein expressed.

I also differ with my Associates as to the probative force of the evidence in this case. Issues are raised by the evidence in this case which ordinary minds are apt to differ as to a proper conclusion to be reached, and for this reason the case should have been submitted to the jury.

I also disagree with my Associates as to the admissibility in evidence of the advertisement of the lost certificate and of the affidavit made by William C. Stanley, both of which, it appears, were made as required by law, and for the express purpose of obtaining the issuance of the duplicate certificate. The instruments are certainly archives of the general land office and are muniments of title. The appellees are relying upon the title which was procured by virtue of said instruments, and, so relying, they should not be heard to say that, because the instruments show a condition adverse to them, they should not be, for that reason, admitted in evidence. I think they should be admitted to show the history of the transaction, and of necessity they are evidence upon the issue of forgery. Ansaldua et al. v. Schwing et al., 81 Tex. 198, 16 S. W. 989; McNeill v. O'Connor, 79 Tex. 227, 14 S. W. 1058; McKee v. West, 55 Tex. Civ. App. 460, 118 S. W. 1135; Trimble v. Burroughs, 95 S. W. 614. I do not think the illustration given by my Associates, or the cases cited, are in point.

I do not deem it necessary for me to enter into a discussion of the evidence further than to say that other deductions might be drawn therefrom. An examination of the "Stanly-Huling" transfer shows the omission of the notary seal; also that the residence of Stanly, as shown by the instrument, at the date of its execution on January 1, 1839, was in Houston county, yet it shows to have been made on said date in Jasper county, and some 14 years thereafter it would appear that the acknowledgment was taken by John Hamilton in Jasper county, yet the Stanley-Stern power of attorney shows that Stanley's residence was at said date of its execution in Angelina county. Other deductions might be made.

I do not agree altogether with my Associates as to their rulings upon the sufficiency of certain assignments, propositions, and statements, but in the view which I take of the case the issues are sufficiently raised and should be decided without resorting to the decisions and a strict construction of the rules which govern the court to show wherein the assignments fail to comply with such decisions and rules.

For the reasons herein assigned, I think the case should be reversed.